# Ex.

# A

FILED
3/10/2025
Timothy W Fitzgerald
Spokane County Clerk

**STATE OF WASHINGTON**
**SPOKANE COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, | NO.  25-2-01212-32 |
| Plaintiff, | |
| v. | COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| ADAMS COUNTY SHERIFF'S OFFICE; ADAMS COUNTY; | |
| Defendants. | |

## I.     INTRODUCTION

1.1     Six years ago, a bipartisan coalition of lawmakers passed the Keep Washington Working Act based on a simple premise: it is not the job of state law enforcement, county sheriffs, or local police departments in Washington to enforce federal immigration law.

1.2     Immigration enforcement is a federal responsibility, and the Keep Washington Working Act does not stop federal officials from accomplishing their work.

1.3     As a sovereign state, Washington has the right and the responsibility to decide for itself how to use its own resources to keep residents safe and the economy strong. The federal government has no authority to coerce or direct local law enforcement for its own purposes.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

1.4    Rather than do the federal government's job—and absorb the uncompensated fiscal, legal, operational, and community-confidence costs that would come with it—the Keep Washington Working Act (KWW) ensures that Washington's limited law enforcement resources are best spent enforcing state law, solving crime, and helping ensure the state remains "a place where the rights and dignity of all residents are maintained and protected in order to keep Washington working." RCW 43.17.425; Laws of 2019, ch. 440, § 1.

1.5    For years, Adams County and the Adams County Sheriff's Office have known of their obligations under KWW. But since at least 2022, they have consistently engaged in several practices that violate state law. Sheriff's deputies have unlawfully held people in custody based solely on their immigration status. They have gone out of their way to enable federal immigration agents to interview or question people in custody, including transporting people in county vehicles expressly for that purpose. And they have proactively and routinely shared the nonpublic, personal information of hundreds of Washingtonians—including birth dates, home addresses, driver's license numbers, and fingerprints—with federal immigration officials. All of this conduct expressly violates state law.

1.6    Adams County's failure to comply with KWW is an anomaly. Hundreds of Washington law enforcement agencies across the state have successfully implemented KWW's basic and commonsense policies without incident. Indeed, law enforcement leaders in Washington have been vocal in their support for KWW. They understand that conserving state resources for the core duties of local law enforcement complements their mission to further public safety, protect all residents fairly, and build relationships of trust with the communities they serve. KWW is a success story.

1.7    Still, for over two years, Adams County, the Sheriff's Office, and the Adams County Sheriff have failed to follow state law. This is true despite multiple efforts by the Attorney General's Office (AGO) to cooperatively remedy these violations with the County and Sheriff's Office, to help them come into compliance with KWW. Through multiple meetings

1    and written communications, the AGO provided specific information about the County's

2    violations and offered detailed recommendations to reform these unlawful practices and ensure

3    that the residents of Adams County benefit from the same protections that KWW provides to

4    residents throughout the state. By late 2024, the parties were engaged in good faith settlement

5    negotiations in the hopes of resolving the case without costly litigation.

6    1.8    But the inauguration of President Donald Trump in January 2025 changed things.

7    Adams County and the Sheriff took a new approach—rather than comply with KWW, they now

8    claim it is illegal. On February 20, 2025, in a letter to the Attorney General, the County and

9    Sheriff asserted, for the first time, that "Adams County has obligations under federal law that

10   directly conflict" with KWW. They now argue that 8 U.S.C. § 1373 "specifically preempts State

11   law," and baselessly claim that KWW requires them to "impede" federal immigration

12   enforcement.

13   1.9    Courts have reiterated multiple times that states have a right to limit their

14   cooperation with federal immigration authorities, and that laws like KWW do not violate the

15   federal Constitution or other federal laws. Adams County and the Sheriff know this but have

16   nonetheless decided to violate KWW.

17   1.10   Adams County and the Sheriff have also signaled their new resistance to KWW

18   by aligning themselves with "America First Legal," a nonprofit founded by Stephen Miller, now

19   a top aide and homeland security advisor to President Trump. Stephen Miller's extreme views

20   on immigrants are no secret. He has consistently denigrated immigrant families and dismissed

21   the essential role they play supporting their communities and the local economy. He has repeated

22   white nationalist talking points and is responsible for shaping some of the Trump

23   Administration's harshest immigration policies. According to Miller, "America is for Americans

24   and Americans only."

25   1.11   Days after Adams County and the Sheriff sent the letter to the AGO, America

26   First Legal put out a press release, began a social media campaign, and added a scrolling banner

next to a "Donate" button on its website to celebrate its efforts to "fight[] back" and "combat[] Washington State's Illegal Sanctuary Scheme."

    1.12    Court intervention is necessary here. The State has an obligation to protect the rights of its residents and defend Washington law, even when that unfortunately requires taking enforcement against its own political subdivisions. The State cannot stand by when elected officials publicly boast that they are breaking state law and putting their own communities at risk. For this reason, the State brings this action against Adams County and the Adams County Sheriff's Office to end their violations of the Keep Washington Working Act.

## II.    PARTIES

    2.1    Plaintiff is the state of Washington. The Attorney General is authorized to commence this action pursuant to RCW 43.10.030(1).

    2.2    The State has an interest in protecting the health, safety, and well-being of its residents, including ensuring that they are not excluded from the rights and privileges provided by Washington law.

    2.3    Violations of KWW by Adams County and the Adams County Sheriff's Office (collectively, Defendants) infringe the rights of the residents of Adams County and Washington State, are matters of public concern in which the State has an interest, and are matters on which the Attorney General is authorized to act pursuant to RCW 43.10.030(1).

    2.4    Preventing law enforcement misconduct is also a matter of public concern in which the State has an interest and for which the Attorney General is authorized to act pursuant to RCW 43.10.030(1).

    2.5    Defendant Adams County is a municipal corporation and a political subdivision of the state of Washington and may be sued pursuant to RCW 36.01.010. Adams County is responsible for the operations and actions of Defendant Adams County Sheriff's Office and its employees.

1    2.6    Defendant Adams County Sheriff's Office is an agency of Adams County and

2  may be sued pursuant to RCW 36.28.010. Sheriff Dale Wagner is the elected Sheriff of Adams

3  County and directs the operations of the Adams County Sheriff's Office.

### III.    JURISDICTION AND VENUE

4

5    3.1    The State brings this action against Defendants to enforce the Keep Washington

6  Working Act, RCW 10.93.160, RCW 43.10.315, and RCW 43.17.425. This Court has

7  jurisdiction over these claims under RCW 2.08.010 and RCW 7.24.010.

8    3.2    Venue is proper in Spokane County pursuant to RCW 36.01.050 because

9  Spokane County is one of the two judicial districts nearest to Adams County.

### IV.    FACTS

10

11  **A.    Washington's Long and Proud History of Protecting the Civil Rights of Its**

12       **Residents and Diverse Workforce**

13    4.1    In 1949—fifteen years before Congress passed the federal Civil Rights Act—our

14  State passed the Washington Law Against Discrimination, RCW 49.60, prohibiting

15  discrimination in employment on the basis of race, creed, color, or national origin. *See* Laws of

16  1949 ch. 183, § 2.

17    4.2    Over the next 75 years, Washington expanded civil rights protections to more of

18  its residents, including enacting prohibitions on discrimination on the basis of citizenship or

19  immigration status. Laws of 2020 ch. 52, § 4; RCW 49.60.010, .030, .040(2), .215. Those

20  prohibitions cover discrimination at the hands of state or local officials, except to the extent that

21  such distinction or differential treatment is authorized by state or federal law. *Id.*

22    4.3    KWW further enhances Washington's civil rights laws by "ensuring the state of

23  Washington remains a place where the rights and dignity of all residents are maintained and

24  protected in order to keep Washington working." RCW 43.17.425; Laws of 2019, ch. 440, § 3.

25

26

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

5

**B.    The Keep Washington Working Act Serves the Economic Interests of the State and Adams County**

4.4    When the Legislature passed KWW, it sought to protect the economic interests of Washingtonians, in addition to their civil rights. The Legislature specifically found "that Washington employers rely on a diverse workforce to ensure the economic vitality of the state," including the "sixteen percent of the workforce" comprised of non-citizen workers. RCW 43.17.425; Laws of 2019, ch. 440, § 2. KWW's rationale is particularly strong with respect to Washington's agriculture sector, which is a critical component of the state's economy that accounted for more than $12.7 billion in sales of agricultural products in 2022. *See* U.S. Dep't of Agriculture, *Ranking of Market Value of Ag Products Sold Washington, 2022* (2022).[1]

4.5    The economic vitality of Washington's agricultural industry is closely tied to the working conditions and physical security of its non-citizen residents. Farms in Washington routinely turn to non-citizen workers to ensure their crops are harvested in a timely and efficient manner. Indeed, Washington's agricultural labor force is nearly 50 percent foreign born. *See* Migration Policy Institute, *State Immigration Data Profiles: Washington* (last visited March 9, 2025) (calculating that 46.6% of Washington's agriculture, forestry, fishing and hunting, and mining industry workers are foreign born, a term that encompasses naturalized citizens, lawful permanent immigrants, refugees and asylees, certain legal nonimmigrants, and individuals who are in the United States without authorization).[2] As intended, President Trump's plans to arrest and deport large numbers of non-citizens has caused tremendous concern for both non-citizens in Washington and the farms that rely on their skilled labor. *See* Reneé Dìaz, *Can Washington's Farms Survive? Labor Shortages and Deportation Fears Threaten Agriculture*, The Wenatchee

---

[1]    Available at: https://www.nass.usda.gov/Publications/AgCensus/2022/Online_Resources/Rankings_of_Market_Value/market_value_53.pdf.

[2] Available at: https://www.migrationpolicy.org/data/state-profiles/state/workforce/WA.

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

World (Jan. 15, 2025) (noting the "pressing concern" of labor shortages caused by "the potential for mass deportations under policies proposed by President-elect Donald Trump").[3]

4.6    The economic arguments in favor of compliance with KWW carry particular force in Adams County, where agriculture dominates the local economy. *See* Wash. State Emp. Sec. Dep't, *Adams County Profile* (Feb. 2025).[4] In 2022, farms in Adams County sold more than $561 million worth of agricultural products, including field crops such as wheat and oil seeds, as well as fruits and vegetables like apples and potatoes. *See* U.S. Dep't of Agric., *2022 Census of Agriculture County Profile: Adams County Washington*.[5] And, like the rest of Washington's agricultural sector, agricultural operations in Adams County also use and rely on the labor of non-citizens. *See* U.S. Dep't of Agric., *2022 Census of Agriculture: Washington State and County Data, Table 7* (Feb. 2024).[6]

4.7    Even without the economic benefits to Adams County's important agrarian economy, its residents—approximately 64% of whom identify as Hispanic or Latino—deserve the protections afforded by KWW so that they too may live and work with dignity in Adams County. *See* U.S. Census Bureau, *2020 Decennial Census: Hispanic or Latino, and Not Hispanic or Latino by Race* (2020) (filtered for Adams County, Washington).[7]

4.8    By protecting the rights and dignity of all Washingtonians, KWW in turn protects and promotes the economic interests of Washington and its powerhouse agricultural sector. For the same reason, using limited state and local law enforcement resources to assist with the federal government's dragnet immigration enforcement efforts is inconsistent with those interests.

---

[3] Available at: https://www.wenatcheeworld.com/news/can-washington-s-farms-survive-labor-shortages-and-deportation-fears-threaten-agriculture/article_b9015942-d34e-11ef-8922-27b85bd10e2b.html.
[4] Available at: https://esd.wa.gov/jobs-and-training/labor-market-information/reports-and-research/labor-market-county-profiles/Washington/adams-county-profile.
[5] Available at: https://www.nass.usda.gov/Publications/AgCensus/2022/Online_Resources/County_Profiles/Washington/cp53001.pdf.
[6] Available at: https://data.nass.usda.gov/Publications/AgCensus/2022/Full_Report/Volume_1,_Chapter_2_County_Level/Washington/st53_2_007_007.pdf.
[7] Available at: https://data.census.gov/table/DECENNIALPL2020.P2?q=p2&g=050XX00US53001.

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

**C.     Participating in Civil Immigration Enforcement Increases Costs to Local Jurisdictions and Exposes Them to Liability for Civil Rights Violations**

4.9     In addition to the economic toll described above, Washington has determined that allowing state or local law enforcement to participate in civil immigration enforcement also directly increases costs—both monetary and non-monetary.

4.10     For example, U.S. Immigration and Customs Enforcement (ICE) has a practice of issuing civil warrants and detainer requests, whereby ICE asks jails to hold a person past their release date solely for the purposes of civil immigration enforcement. In King County, honoring civil warrants or detainer requests from ICE resulted in longer and costlier jail stays, failed to primarily target serious criminals, and consumed significant taxpayer resources. *See* Katherine Beckett, Ph.D. and Heather Evans, M.A., *Immigration Detainer Requests in King County, Washington: Costs and Consequences* (Mar. 26, 2013).[8] Conversely, a 2017 study found that counties that limited local law enforcement's participation in civil immigration enforcement had lower crime rates and stronger economies than those that did not. *See* Tom K. Wong, *The Effects of Sanctuary Policies on Crime and the Economy*, Center for American Progress (Jan. 26, 2017).[9]

4.11     Taxpayers in Washington have also had to foot the bill when their local jurisdictions violate the constitutional rights of Washingtonians while assisting with civil immigration enforcement. Since 2017, multiple cities and counties in Washington have been named in federal civil rights lawsuits brought by individuals whom local law enforcement held in custody solely at the behest of federal authorities enforcing civil immigration laws. *See Mendoza Garcia v. Okanogan Cnty., et al.*, No. 2:19-CV-00340 (E.D. Wash. 2019) (settlement of $50,000 to resolve claims that County unlawfully held plaintiff in county jail for two days after she had been released on her own recognizance);[10] *Enrique Ahumada-Meza v. City of*

---

[8]     Available at: https://immigrantjustice.org/sites/immigrantjustice.org/files/Detainer%20Cost--King%20County%20WA.pdf

[9] Available at: https://www.americanprogress.org/article/the-effects-of-sanctuary-policies-on-crime-and-the-economy/.

[10]     Available at: https://nwirp.org/our-work/impact-litigation/assets/mendoza-garcia/settlement%20agreement%20fully%20signed.pdf

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

8

1  *Marysville et al.*, No. 2:19-cv-1165 (W.D. Wash. 2019) (settlement of $85,000 to resolve claims

2  that City unlawfully detained plaintiff overnight pursuant to civil immigration request);[11] *Gomez*

3  *Maciel v. Coleman and City of Spokane*, No. 2:17-cv-292 (E.D. Wash. 2017) (settlement of

4  $49,000 to resolve claims that police officer unlawfully arrested the victim of traffic accident in

5  order to turn them over to civil immigration agents);[12] Notice of Settlement, *Rodriguez*

6  *Macareno v. Thomas, et al.*, No. 2:18-cv-00421 (W.D. Wash. May 28, 2019) (settlement of

7  undisclosed amount to resolve claims that Tukwila police officers seized plaintiff—a victim of

8  a crime who sought police assistance—and transferred him to custody of federal immigration

9  authorities); Judgment, *Olivera Silva v. Campbell, et al.*, No. 1:17-cv-3215 (E.D. Wash. Sept.

10 24, 2018), ECF No. 60 (judgment of $10,000 in damages and $141,986.70 in attorney fees after

11 Yakima County jail continued to detain plaintiff based on immigration detainer); Settlement

12 Agreement, *Sanchez Ochoa v. Campbell, et al.*, No. 1:17-cv-3124 (E.D. Wash. Feb. 6, 2019),

13 ECF No. 129 (settlement of $25,000 to resolve claims that Yakima County unlawfully detained

14 individual based on civil immigration warrants).

15     4.12   In one disturbing example, Pierce County unlawfully detained a U.S. citizen on

16 behalf of ICE, resulting in the individual spending a week in the Northwest Detention Center in

17 Tacoma. *Carlos Rios v. Pierce Cnty., et al.*, No. 3:22-cv-5021 (W.D. Wash. 2022) (settlement

18 of $17,500).[13]

19 **D.    Community Cooperation with Local Law Enforcement Decreases When Local**
20 **Authorities Participate in Civil Immigration Enforcement**

21     4.13   There is wide recognition among Washington's law enforcement community that

22 avoiding unnecessary entanglement with federal immigration enforcement is essential for

23 maintaining public safety. These officials have recognized that close coordination with

[11] Available at: https://nwirp.org/uploads/2020/01/Ahumada-Meza-Settlement-Agreement-and-Policy-Statement.pdf
[12] Available at: https://nwirp.org/uploads/2018/06/Gomez-Maciel-Joint-Status-Report.pdf
[13] Available at: https://nwirp.org/our-work/impact-litigation/assets/carlosruiz/RiosVPierceCountySettlement.pdf.

immigration authorities puts crime victims and witnesses without secure immigration statuses in the untenable position of choosing between reporting criminal activity and seeking assistance, or risking becoming vulnerable to immigration officials.

4.14    That sentiment has been succinctly expressed by the Washington Association of Sheriffs and Police Chiefs (WASPC), which has reiterated that "no one in our state should fear calling 911 for help due to their immigration status." *See* WASPC, *WASPC Statement on Local Law Enforcement Involvement in Immigration Status* (Dec. 18, 2024). WASPC members statewide agree.

4.15    For instance, Clallam Couty Sheriff Brian King recently stated that he "want[s] residents to know that no one in our state should fear calling 911 for help due to their immigration status. The role of our Deputies is to serve and protect everyone. We will always seek to provide that protection fairly, and without regard for immigration status." Email from Brian King, Clallam County Sheriff, to Farah Eltohamy (Jan. 28, 2025).[14] Grays Harbor County Sheriff Darrin Wallace has made the same pledge. *See* Email from Darrin E. Wallace, Grays Harbor County Sheriff, to Farah Eltohamy (Feb. 5, 2025).[15]

4.16    Other local law enforcement officials, like Yakima County Sheriff Robert Udell, have further recognized that participating in civil immigration enforcement undermines efforts to build community trust, which "is critical," especially "in a county where Hispanics are the majority population." *See* Email from Robert Udell, Yakima County Sheriff, to Moe Clark (Jan. 29, 2025).[16] Thurston County Sheriff Derek Sanders believes that local law enforcement's "focus should remain on building trust and deterring/solving crime." *See* Email from Derek Sanders, Thurston County Sheriff, to Moe Clark (Jan. 29, 2025).[17]

---

[14] Available at: https://www.documentcloud.org/documents/25538167-brian-king-clallam-county/.
[15] Available at: https://www.documentcloud.org/documents/25538151-darrin-wallace-grays-harbor-county/.
[16] Available at: https://www.documentcloud.org/documents/25538164-robert-udell-yakima-county/.
[17] Available at: https://www.documentcloud.org/documents/25538155-derek-sanders-thurston-county/.

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

4.17    Mount Vernon Police Chief Dan Christman starkly noted how a lack of trust by residents can adversely affect law enforcement:

> Any member of our community, regardless of immigration status, must be able to call the police when they need help and support our investigation when they witness a crime. A victim of domestic violence should not have to decide if they want to suffer in silence or be deported when asking for help. A witness to a crime should not have to choose between helping to hold the suspect accountable and their own freedom. A suspect in a violent crime should not be able to escape justice because they believe the local authorities will not act.

*See* Mount Vernon Police Chief, Dan Christman, A Letter from the Mount Vernon Police Chief to our Community about Immigration Enforcement (accessed on March 7, 2025).[18]

4.18    Lewis County Sheriff Rob Snaza has likewise emphasized that the Sheriff's Office's primary mission is to keep the community safe, and that "[i]n order to best accomplish this, we must build confidence so victims and witnesses to crimes come forward to report such criminal activity and/or seek assistance, as needed, without fear of becoming vulnerable to immigration repercussions." *See* Sharyn L. Decker, *Tensions build between immigration enforcement, local law enforcement,* Lewis County Sirens.com (Mar. 31, 2017).[19]

4.19    Former King County Prosecutor Dan Satterberg observed that his office was "able to hold many violent offenders accountable precisely because of the brave cooperation from undocumented residents who are witnesses or victims of crime, including murder, rape, and domestic violence." *See* Decl. of Daniel T. Satterberg in Supp. of Pls.' Mot. for Prelim. Inj., *State v. U.S. Dep't of Homeland Sec.*, No. 2:19-cv-02043-TSZ (W.D. Wash. Nov. 6, 2019), ECF No. 43.

4.20    The widespread concern that crime victims and witnesses will not report incidents to law enforcement is rooted in actual experience. For instance, after ICE executed civil

---

[18]    Available    at:    https://mountvernonwa.gov/DocumentCenter/View/16725/2025-Police-Chief-Immigration-letter-English.

[19] Available at: https://lewiscountysirens.com/?p=40268&cpage=1.

11

immigration arrests outside the Thurston County Courthouse in 2019, Thurston County Prosecutor Jon Tunheim observed that "undocumented domestic violence victims have expressed to their advocates that they no longer feel safe reporting abuse to the authorities for fear of deportation." *See* Decl. of John Tunheim in Supp. of Pls.' Mot. for Prelim. Inj., *State v. U.S. Dep't of Homeland Sec.*, No. 2:19-cv-02043-TSZ (W.D. Wash. Nov. 6, 2019), ECF No. 47.

**E.     The Keep Washington Working Act Carefully Circumscribes State and Local Participation in Civil Immigration Enforcement Efforts**

4.21     To address these concerns, KWW establishes a statewide policy that it is not state or local law enforcement's primary purpose to enforce federal civil immigration law. It further establishes that a person's immigration status, presence in the country, or employment in the United States alone "is not a matter for police action." RCW 10.93.160(2).

4.22     To achieve the law's twin purposes of protecting the rights and dignity of all Washingtonians and preserving limited law enforcement resources, KWW generally prohibits state and local law enforcement agencies from engaging or assisting in civil immigration enforcement. Law enforcement may not use nonpublic information for federal civil immigration enforcement; they may not arrest, detain, or hold individuals in custody based solely on civil immigration warrants or detainers, or based on detention agreements with federal immigration authorities; and they may not facilitate contact between federal authorities and individuals in custody solely for civil immigration enforcement purposes.[20]

4.23     KWW is also clear that law enforcement investigations should not be used as a tool to gather information solely for federal immigration enforcement purposes. The vast majority of the time, there is no reason for officers to ask suspects, victims, or witnesses about their citizenship or immigration status, or place of birth, except when there is a connection

---

[20] As defined by KWW, a civil immigration warrant or detainer is "any warrant for a violation of federal civil immigration law issued by a federal immigration authority . . . [that] . . . includes but is not limited to, administrative warrants issued on forms I-200 or I-203, or their successors, and civil immigration warrants entered in the national crime information center database." *See* RCW 43.17.420. These do not have the same force and effect as a criminal warrant issued by a federal judge or magistrate.

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 442-4492

between that information and law enforcement's investigation into a violation of state or local criminal law. RCW 10.93.160(4)(a). Nor may local law enforcement share nonpublicly available information about an individual with federal immigration authorities for civil immigration enforcement purposes—whether proactively or in response to an information request from federal authorities—except as required by state or federal law, including 8 U.S.C. § 1373. RCW 10.93.160(4)(b), (5); RCW 43.17.425; Laws of 2019, ch. 440, § 8.

4.24    KWW affords law enforcement more discretion when public safety is directly implicated.

4.25    For instance, KWW authorizes the Washington State Department of Corrections to share nonpublic information with federal immigration officials for the purpose of detaining and/or deporting individuals convicted of felonies. RCW 10.93.160(15).

4.26    Further, under KWW, law enforcement may provide "citizenship or immigration status" information to federal immigration authorities pursuant to 8 U.S.C. § 1373. *See* RCW 43.17.425; Laws of 2019, ch. 440, § 8. That federal statute makes it unlawful for a state to "prohibit, or in any way restrict" a government entity or official from sending "citizenship or immigration status" information about an individual to federal immigration authorities or receiving such information from immigration authorities. 8 U.S.C. § 1373. KWW recognizes this requirement of federal law, and accordingly, does not restrict officers from sharing information about "citizenship or immigration status." RCW 43.17.425; Laws of 2019, ch. 440, § 8.

4.27    As the federal Ninth Circuit Court of Appeals has held, however, the information-sharing requirements in 8 U.S.C. § 1373 apply only to information about citizenship or immigration status. *City & Cnty. of San Francisco v. Barr*, 965 F.3d 753, 763 (9th Cir. 2020). Section 1373 does *not* require law enforcement to collect or share other information about a person, such as their release date or contact information. *Id.* Section 1373 thus does not prohibit states from passing laws like KWW, which bar local entities from sharing additional information

1    outside of Section 1373's scope. The Ninth Circuit has repeatedly addressed challenges to laws

2    of California and San Francisco that contain limits on information sharing similar to those in

3    KWW, and held that those laws do not conflict with 8 U.S.C. § 1373. *See City & Cnty. of San*

4    *Francisco v. Garland*, 42 F.4th 1078, 1085 (9th Cir. 2022) (discussing cases).

5        4.28    To help reduce instances in which state and local jurisdictions run afoul of

6    constitutional prohibitions on unreasonable search and seizure, KWW prohibits law enforcement

7    from detaining an individual or holding them in custody solely for the purpose of determining

8    their immigration status or solely based on a civil immigration detainer or warrant.

9    RCW 10.93.160(7), (8). KWW likewise prohibits law enforcement from entering into

10   agreements with federal immigration authorities to enforce civil immigration law, or to detain

11   individuals arrested on civil immigration violations. RCW 10.93.160(11), (12). In this way,

12   KWW ensures that the State has an independent criminal basis to detain a person and helps

13   minimize local law enforcement's exposure to liability for civil rights violations.

14       4.29    Finally, KWW prohibits local law enforcement from using their facilities or

15   resources to facilitate civil immigration enforcement, ensuring that those resources remain

16   dedicated to the purpose of enforcing state and local criminal law. RCW 43.17.425; RCW

17   43.10.315. To that end, local law enforcement cannot grant federal immigration authorities

18   access to interview an individual in the custody of local law enforcement about a noncriminal

19   matter unless access is required by state or federal law, a court has ordered that such access be

20   granted, or the individual in custody has consented in writing to be interviewed.

21   RCW 10.93.160(6). To obtain this consent, the local jurisdiction must provide the individual in

22   custody with written notice of the purpose of the interview, the individual's right to refuse to

23   speak with federal immigration authorities, and the right to be interviewed with the individual's

24   attorney present. *Id.* As with other provisions of KWW, these requirements do not apply when

25   federal immigration officials seek to interview an individual about a criminal matter. *Id.*

26

4.30    To assist local jurisdictions in complying with this mandate, the Legislature tasked the Attorney General's Office with providing comprehensive guidance to state agencies and local jurisdictions to ensure they understand their obligations under state and federal law. Specifically, KWW requires the Attorney General to publish model policies and guidance to ensure "that state and local law enforcement duties are carried out in a manner that limits, to the fullest extent practicable and consistent with federal and state law, engagement with federal immigration authorities for the purpose of immigration enforcement." RCW 43.10.315. Under KWW, all state and local law enforcement agencies must either adopt policies consistent with the Attorney General's model guidance or notify the Attorney General that the agency is not adopting the guidance and model policies, state the reasons that the agency is not adopting the model policies and guidance, and provide the Attorney General with a copy of the agency's policies to ensure compliance with KWW. RCW 43.10.315.

4.31    In 2020, pursuant to the Legislature's mandate, the AGO published model policies and guidance for state courthouses, health facilities, public schools, shelters, and local law enforcement agencies.[21]

4.32    In addition to providing written guidance and ongoing support to state and local agencies on the requirements of KWW, the AGO has engaged in informal and productive dialogues with local officials to remedy potential KWW violations by their local law enforcement agencies. *See* University of Washington Center for Human Rights, *Paths to Compliance: The Effort to Protect Immigrant Rights in Washington State* (August 2024).[22] In the instances where such engagement was necessary, the AGO has obtained the jurisdiction's voluntary compliance with KWW without the need for litigation.

---

[21] Available at: KWW Courthouse Model Guidance.pdf; KWW Health Facilities Model Guidance.pdf; KWW Schools Model Guidance.pdf; KWW Shelters Model Guidance.pdf; and KWW LEA Model Guidance.pdf.
[22] Available at: 2024-KWW-update-report-FINAL3.pdf.

**F.    Adams County and the Sheriff's Office Had Ample Opportunity to Reform Their Practices to Comply with Keep Washington Working but Refused to Do So**

4.33    Consistent with the AGO's collaborative approach, the AGO engaged with Adams County regarding its KWW violations and sought to assist the County and Sheriff's Office in complying with the law. On November 28, 2022, the AGO sent a letter to Adams County Sheriff Dale Wagner to notify him of several practices by the Sheriff's Office that violated KWW and request a meeting to address these issues. *See* Ex. A.

4.34    Based on public records reviewed by the AGO, the Sheriff's Office had been violating KWW after it went into effect in May 2019. *Id.* First, between May 2019 and January 2022, Sheriff's Office employees shared nonpublic, personal information with federal immigration authorities at least 212 times. This information pertained to hundreds of individuals, and included their dates of birth, home addresses, fingerprints, driver's license numbers, and anticipated release dates. Most often, and on a near-weekly basis, the Sheriff's Office shared the information proactively by sending "new in custody" jail rosters to federal immigration agents.[23] On other occasions, the Sheriff's Office shared the information in response to information requests from federal immigration officials. Regardless of whether the information was shared proactively or upon request, none of it appeared to have been provided in relation to any criminal matter. Second, on multiple occasions during that same period, the Sheriff's Office continued to hold individuals in custody based on civil immigration detainers and/or warrants received from federal immigration officials. Third, the Adams County Sheriff's Office Policy Manual permitted deputies to detain individuals for no other reason than to determine their immigration status. It also permitted them to share personally identifiable information with immigration

---

[23] Since the end of 2022, the Adams County Jail, which is run by the Adams County Sheriff's Office and maintained by Adams County, has been closed due to safety and staffing issues. The Ritzville detachment of the Sheriff's Office has a limited number of small temporary holding cells, but due to the jail's closure all individuals arrested and held by the Adams County Sheriff's Office are currently being transported to the Franklin County Jail, where they are booked and held until release. *See* Adams County Commissioners' Proceedings Minutes, Jan. 14, 2025; https://cms5.revize.com/revize/adamscounty/DeptPages/Commisioners/Minutes/CP20250114.pdf. Once released from the Franklin County Jail, the Adams County Sheriff's Office transports the individual back to Ritzville.

authorities. And fourth, the Sheriff's Office did not adopt the AGO's model policies and was therefore required to notify the AGO that it was not doing so, provide a copy of the policies it chose to adopt instead, and explain why. The Sheriff's Office failed to do any of these things.

4.35    On January 12, 2023, counsel for the State travelled to Ritzville to meet with Adams County Prosecutor Randy Flyckt to discuss the Sheriff's Office noncompliance with KWW, as identified in the AGO's November 2022 letter. Sheriff Wagner did not attend. During this meeting, the AGO explained why the conduct violated KWW, and what steps the Sheriff's Office could take to come into compliance with the law. These steps were: (1) end the practice of sharing nonpublic information for civil immigration enforcement, unless the law required otherwise; (2) end the practice of unlawfully holding individuals in custody solely to aid in civil immigration enforcement; (3) provide written notice to individuals in Adams County custody of their rights under KWW before they were interviewed by federal immigration agents; (4) update the Sheriff's Office policies; and (5) train staff on the updated policies and procedures once the update was complete.

4.36    Afterwards, the AGO emailed Adams County to reiterate its strong desire to work cooperatively with the Sheriff's Office to address its violations of KWW. *See* Ex. B. The AGO reminded the County of the State's statutory authority to engage in litigation if necessary and offered to meet again with counsel for Adams County in Ritzville.

4.37    But the violations continued. The next month, as the AGO was attempting to work with Adams County to remedy the Sheriff's Office KWW violations, Sheriff Deputies detained two individuals after criminal charges against them had been dismissed, solely for the purpose of civil immigration enforcement. The two men had been arrested on suspicion of stealing a car. While they were under arrest, Sheriff's Deputies questioned the men about their country of origin and then allowed an agent with U.S. Customs and Border Protection (CBP) to speak with them on the phone to determine whether the men were in the U.S. legally. The Deputies did not obtain

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

1   the men's written consent prior to facilitating this interview, nor did they advise them of their

2   rights under KWW to refuse to speak with the CBP officer or have an attorney present.

3          4.38    After the individuals were booked into jail, Sheriff's Office staff emailed a copy

4   of the jail in custody list to a CBP agent, which contained the names and dates of birth of both

5   men. In response, the CBP agent emailed a civil immigration detainer back to Adams County

6   and requested that the Sheriff's Office hold the men so CBP could arrest them. In the meantime,

7   the Adams County Prosecutor's Office informed the Sheriff's Office that all charges against the

8   men would be dismissed due to a lack of evidence, meaning the men would have been free to

9   go. Instead of releasing the men, however, a Sheriff's Deputy retrieved them from the Franklin

10  County Jail, where they were being held, drove them approximately 75 miles back to Ritzville,

11  and transferred them into CBP custody.

12         4.39    These events occurred nearly four years after KWW went into effect, and three

13  months after the AGO had reiterated to Sheriff Wagner that the practice of assisting with civil

14  immigration enforcement violated state law.[24]

15         4.40    On April 6, 2023, the AGO and Prosecutor Flyckt met remotely to discuss Adams

16  County's response to the AGO's concerns. Prosecutor Flyckt explained that he had shared the

17  AGO's concerns with the Adams County Board of Commissioners and Sheriff Wagner.

18  Nonetheless, Sheriff Wagner did not confirm whether his office had stopped the practice of

19  routinely sharing nonpublic information with federal immigration authorities, nor did the Sheriff

20  agree to update the deficient policies identified by the AGO. The Sheriff represented that his

21  office only honored "warrants" from federal immigration authorities, but did not specify whether

22  those were warrants were administrative or judicial. Nor did Sheriff Wagner disclose to the AGO

23  that just a month prior, his Deputies had unlawfully detained the two individuals mentioned

---

24         [24] One of the individuals wrongfully detained by the Sheriff's Office has since sued Adams County, Sheriff

25  Wagner, and the Deputy involved, in a federal civil rights action in the U.S. District Court for the Eastern District
    of Washington. *See Rangel-Sambrano v. Adams Cnty. Sheriff's Off., et al.*, No. 2:25-CV-00003 (E.D. Wash. 2025).[24]

26  If Adams County, Sheriff Wagner, and the Deputy are proven to have violated that individual's constitutional rights,
    they will expose the County to liability for monetary damages and attorney's fees.

1   above based on a CBP administrative warrant. For its part, the Board of Commissioners took the

2   position that they did not have supervisory authority over the operations of the Sheriff's Office

3   or over Sheriff Wagner.

4         4.41    Due to Adams County and the Sheriff's Office's refusal to confirm their

5   compliance with KWW, the AGO submitted a public records request to determine whether the

6   Sheriff's Office had ceased the unlawful practices that the AGO had identified. Many of the

7   records produced in response showed that Sheriff's Office staff continued to proactively share

8   in custody reports with federal immigration officials several months after receiving the AGO's

9   correspondence identifying the practice as a violation of KWW.

10        4.42    On September 20, 2023, the AGO sent another letter to Adams County

11  identifying those additional KWW violations. *See* Ex. C. Once again, the AGO asked the

12  Sheriff's Office to cease sharing nonpublic information with federal immigration authorities,

13  except as required by law, and to implement the policy revisions identified in the AGO's

14  November 2022 letter.

15        4.43    On October 26, 2023, the AGO had another call with Prosecutor Flyckt.

16  Prosecutor Flyckt represented that Sheriff Wagner had finally directed jail and dispatch staff to

17  stop emailing in custody lists to federal immigration authorities. According to Prosecutor Flyckt,

18  Sheriff Wagner also agreed to cease honoring civil immigration detainers, unless accompanied

19  by a judicial warrant, and was working on the policy updates the AGO had requested he make.

20        4.44    But despite these representations, Sheriff's Office staff continued to send in

21  custody reports to federal immigration authorities. In addition, the Sheriff's Office updated its

22  Policies Manual in December 2023 without making any of the revisions requested by the AGO.

23        4.45    The AGO continued to seek Adams County and the Sheriff's Office's voluntary

24  compliance with KWW, even in the face of their intransigence. On November 26, 2024, after

25  two years of cooperative attempts to resolve Adams County's noncompliance, the AGO

26

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

informed Adams County that it was prepared to file a lawsuit to hold the County accountable to the requirements of KWW. Ex. D.

4.46 Nevertheless, the AGO reiterated its preference for a voluntary resolution of the County's KWW violations without the need for litigation. The AGO offered a resolution that would include staff training, revisions to the Sheriff's Office Policy Manual, and ongoing compliance monitoring.

4.47 The AGO agreed to defer filing its complaint if the parties could reach a final, executed agreement. Prosecutor Flyckt confirmed that Adams County was open to settlement and requested that the AGO send a proposed agreement, which the AGO did on January 7, 2025.

## G. President Trump Is Inaugurated and Adams County Reverses Course

4.48 Since his inauguration on January 20, 2025, President Trump has made no secret of his goal to drastically reduce immigration to the United States, restrict the rights of lawful immigrants, and interfere with states' sovereign rights to manage their own law enforcement affairs in order to best protect their local communities. Pertinent here, the President issued Executive Order 14,159, entitled "Protecting the American People Against Invasion" 90 Fed. Reg. 8443 (Jan. 20, 2025).

4.49 Section 17 of the Executive Order provides:

> *Sanctuary Jurisdictions.* The Attorney General and the Secretary of Homeland Security shall, to the maximum extent possible under law, evaluate and undertake any lawful actions to ensure that so-called "sanctuary" jurisdictions, which seek to interfere with the lawful exercise of Federal law enforcement operations, do not receive access to Federal funds. Further, the Attorney General and the Secretary of Homeland Security shall evaluate and undertake any other lawful actions, criminal or civil, that they deem warranted based on any such jurisdiction's practices that interfere with the enforcement of Federal law.

4.50 On January 21, 2025, the U.S. Department of Justice's Acting Deputy Attorney General issued a memorandum titled "Interim Policy Changes Regarding Charging, Sentencing,

and Immigration Enforcement" (Bove Memo). The Bove Memo asserts that "[t]he Supremacy Clause and other authorities require state and local actors to comply with the Executive Branch's immigration enforcement initiatives," and directs DOJ prosecutors nationwide to investigate and bring criminal charges against state and local officials for "resisting, obstructing, and otherwise failing to comply with lawful immigration-related commands and requests."[25]

4.51    Four days later, the AGO had its seventh discussion with Prosecutor Flyckt regarding the voluntary resolution of Adams County's KWW violations, focusing on the AGO's proposed settlement. The County stated at that meeting—for the first time in the more than two years that the AGO had been attempting to remedy the County's KWW violations—that it was concerned that complying with the injunctive provisions of the consent decree could violate federal law or expose the County to federal criminal liability. Shortly thereafter, on February 18, 2025, Prosecutor Flyckt informed the AGO that he had appointed a special deputy prosecutor to represent the County and the Sheriff going forward. The County was no longer interested in settlement.

4.52    On February 20, 2025, Special Deputy Prosecutor Joel Ard sent a letter to the AGO regarding "Proposed Consent Decree in *Washington v. Admas* [sic] *County*, Spokane Cnty Sup. Ct. (Unfiled)." Ex. E. The letter stated that in addition to Mr. Ard, Adams County and Sheriff Wagner would also be represented by two additional law firms based in Washington, D.C.: the America First Legal Foundation and Cooper & Kirk.

4.53    In this letter, the County declares, for the first time, that "Adams County has obligations under federal law that directly conflict" with KWW. The County argues that 8 U.S.C. § 1373 "specifically preempts State law," and baselessly claims that KWW requires it to "impede" federal immigration enforcement.

---

[25] Available at: https://www.documentcloud.org/documents/25501043-memorandum-from-the-acting-deputy-attorney-general-01/.

4.54    The County cites a litany of federal criminal statutes, mirroring those cited in the Bove Memo, and references Executive Order 14,165, "Securing Our Borders," as well as a memo issued by U.S. Attorney General Pamela Bondi that echoes the Bove Memo's direction to prosecute state and local officials who "impede, obstruct, or otherwise fail to comply with lawful immigration-related directives." Adams County ends its letter by asking the AGO to "end its plans to sue Adams County over its efforts to comply with federal law[.]"

4.55    On February 26, 2025, WASPC—an association of which Sheriff Wagner is a member—issued a statement that contradicts the representations in the County's February 20 letter. WASPC stated:

> Rhetoric does not change the fact that the focus of local law enforcement is on criminal violations that affect local community safety and quality of life. We have every confidence that our state's Sheriffs and Chiefs will neither violate state laws nor interfere with [ICE] or federal laws and duties . . . . Sheriffs and Chiefs across our state have been clear and consistent that they will follow both state and federal law. The federal government has no direct authority over local law enforcement.[26]

4.56    But Adams County has chosen rhetoric and extreme public statements over compliance with the law. The same day WASPC issued its statement, America First Legal Foundation published Adams County's letter on its website. *See* Ex. F. The accompanying post repeats the same incorrect statements that appear in the County's letter, claiming that the AGO's proposed consent decree will "compel it to violate federal law for the next four years." The post, made by the legal representatives of Adams County and the Sheriff's Office, also admits that Adams County officials "have been cooperating with ICE[.]" *Id.*

## V.    CAUSE OF ACTION
### (Uniform Declaratory Judgment Act Claim for Violations of the Keep Washington Working Act)

5.1    The State incorporates the allegations set forth above as if fully set forth here.

---

[26] Available at: https://www.waspc.org/assets/waspc/WASPC%20Immigration%20Statement.pdf.

5.2    As set forth above, Defendants' actions violated KWW in the following ways:

    5.2.1    Providing nonpublicly available personal information about an individual to federal immigration authorities in a noncriminal matter in violation of RCW 10.93.160(5);

    5.2.2    Providing information in response to a notification request from federal immigration authorities for the purpose of civil immigration enforcement in violation of RCW 10.93.160(4)(b);

    5.2.3    Allowing federal immigration authorities to interview individuals in custody regarding a noncriminal matter in violation of RCW 10.93.160(6)(a);

    5.2.4    Giving federal immigration authorities access to individuals in custody without first providing the individuals with the notices required by KWW that explain their right to refuse to speak to federal immigration authorities, right to have an attorney present if they voluntarily choose to be interviewed by federal immigration authorities, and that no retaliation or punishment would result if they chose not to be interviewed, in violation of RCW 10.93.160(6)(b);

    5.2.5    Giving federal immigration authorities access to individuals in custody without first obtaining the person's written consent to be interviewed by federal immigration authorities in violation of RCW 10.93.160(6)(b);

    5.2.6    Imprisoning individuals based on a civil immigration warrant and/or hold request, in violation of RCW 10.93.160(8).

    5.2.7    Failing to either (1) adopt policies consistent with the AGO's published model policies, guidance, and training recommendations for KWW or (2) notify the AGO that it was not adopting the guidance and model policies, state the reasons that it was not, and provide the AGO with a copy of its

23

1    policies to ensure Adams County's compliance with KWW, in violation

2    of RCW 43.10.315.

3    5.3    Defendants' actions described in paragraphs 5.1 through 5.2.7 constitute

4    violations of KWW, RCW 10.93.160 and RCW 43.10.315, and are a matter of public concern.

5    5.4    The State has a well-founded fear that Defendants' violations of KWW are likely

6    to reoccur.

7    5.5    Defendants' actions have deprived Washington residents of the rights and

8    privileges provided by Washington law.

9    5.6    Whether Defendants' conduct violates KWW is an issue of public importance.

10    5.7    In addition to the foregoing, there is an actual, present, and existing dispute

11    between the State and Defendants. The State and Defendants have genuine and opposing

12    interests which are direct and substantial. A judicial determination of this dispute will be final

13    and conclusive.

14    5.8    The State is entitled to have this Court review the controversy and declare rights,

15    status, or legal relations of the parties, and to seek declaratory and injunctive relief, pursuant to

16    RCW 7.24.010, RCW 7.24.080, and RCW 7.24.190.

17    5.9    The Court should declare that Defendants' actions, as set forth above, violate

18    KWW.

19    5.10    The State is entitled to injunctive relief pursuant to RCW 7.24.190 because: (1)

20    it has a clear right to have Defendants comply with KWW; (2) the State has a well-grounded

21    fear of immediate invasion of right based on the conduct described in Section IV above; and (3)

22    Defendants' actions will result in actual and substantial injury to the interests of the State and

23    the health, safety, and well-being of its residents.

24    5.11    The State has no plain, speedy, and adequate remedy to challenge Defendants'

25    actions in the ordinary course of law.

26

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF

24

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 442-4492

# VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff State prays that the Court:

6.1    Adjudge and decree that Adams County and the Adams County Sheriff's Office have engaged in the conduct complained of in this complaint;

6.2    Adjudge and decree that Adams County and the Adams County Sheriff's Office's actions as set forth above violate KWW;

6.3    Permanently enjoin Adams County and the Adams County Sheriff's Office, and their representatives, successors, assigns, officers, agents, servants, employees, and all other persons acting or claiming to act for, on behalf of, or in active concert or participation with Adams County, from continuing or engaging in the unlawful conduct complained of in this complaint; and

6.4    Award such other relief as the Court may deem just and proper.

DATED this 9th day of March, 2025.

NICHOLAS W. BROWN
Attorney General

EMILY C. NELSON, WSBA # 48440
BEN SEEL, WSBA # 61165
Assistant Attorneys General
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Phone: (206) 464-7744
Fax: (206) 464-6457
emily.nelson@atg.wa.gov
benjamin.seel@atg.wa.gov

# Exhibit A



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue • Suite 2000 • MS TB 14 • Seattle WA 98104
(206) 464-7744

November 28, 2022

**VIA U.S. MAIL AND E-MAIL**

Sheriff Dale J. Wagner
Adams County Sheriff's Office
210 W. Broadway
Ritzville, WA 99169
dalew@co.adams.wa.us

RE:    **Adams County Sheriff's Office's Compliance with Keep Washington Working Act**

Dear Sheriff Wagner:

The Attorney General's Office is committed to protecting the civil rights of everyone in the state of Washington. This includes ensuring that units of local government comply with state law designed to protect vulnerable individuals from being targeted by law enforcement based on their status as members of a protected class, such as national origin, citizenship, or immigration status. *See* RCW 49.60.030(1). I write to raise concerns that the Adams County Sheriff's Office may be in violation of the Keep Washington Working Act (KWW), RCW 10.93.160.

As you know, KWW restricts local law enforcement agencies from participating in the enforcement of federal immigration laws. KWW provides that a person's immigration status, presence, or employment in the U.S. is not a matter for police action, and enforcing civil federal immigration law is not local law enforcement's primary purpose. RCW 10.93.160(2).

To that end, KWW expressly prohibits local law enforcement agencies from, among other things:

- Inquiring into or collecting information about an individual's immigration or citizenship status, or place of birth, unless there is a connection between such information and an investigation into a violation of state or local criminal law;
- Providing information in response to a notification request from federal immigration authorities for the purposes of civil immigration enforcement;
- Providing nonpublicly available personal information about an individual to federal immigration authorities in a noncriminal matter, except as required by law; and
- Detaining someone, or holding someone in custody, solely for the purposes of determining immigration status or based solely on a civil immigration warrant or immigration hold request.

RCW 10.93.160(4)-(8).

ATTORNEY GENERAL OF WASHINGTON

November 28, 2022
Page 2

In May 2020, at the Legislature's direction, the Attorney General published Guidance, Model Policies, and Training Recommendations for State and Local Law Enforcement Agencies, to ensure that "local law enforcement duties are carried out in a manner that limits, to the fullest extent practicable and consistent with federal and state law, engagement with federal immigration authorities for the purpose of immigration enforcement." RCW 43.10.315; https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Home/Office_Initiatives/KWW/KWW%20LEA%20Model%20Guidance.pdf. I have enclosed a copy of these documents for your review.

KWW requires local law enforcement agencies, including the Adams County Sheriff's Office, to either (1) adopt policies consistent with the Attorney General's guidance; or (2) notify our Office that they are not adopting the guidance, state the reasons why, and provide a copy of the agency's policies that ensure compliance with KWW. RCW 43.10.315(1)-(2). To date, our Office has not received any information from the Adams County Sheriff's Office regarding its compliance with these provisions.

Accordingly, on January 24, 2022, our Office requested information from the Adams County Sheriff's Office reflecting your communications with federal immigration officials from May 2019 through December 2021. We reviewed information responsive to that request in batches as it was provided by your Office, as well as Adams County Sheriff's Office policies. Based on our review, it appears that your Office has engaged in conduct that may violate the above-cited provisions of KWW.

The records we reviewed indicate that since the effective date of KWW (May 21, 2019), staff in your Office contacted federal immigration officials at least 212 times to share nonpublicly available information pertaining to hundreds of individuals in custody at the Adams County Jail. The nonpublic information shared included dates of birth, FBI numbers, home addresses, drivers' license numbers, and anticipated jail release dates. None of this information appears to have been provided in connection with an ongoing criminal matter. In fact, the majority of the time, Adams County Sheriff's Office staff appear to have proactively provided this information from your "new in custody" lists to federal immigration officials, in plain violation of KWW. *See* RCW 10.93.160(5). Additionally, it appears that Adams County Sheriff's Office has continued to receive civil immigration warrants and serve them on individuals in your custody in violation of KWW.

We also reviewed the Adams County Sheriff's Office Policy Manual and identified certain policies that may be contributing to the above violations. First, Policy 428.4 (Immigration Violations – Enforcement) permits Deputies to "detain an individual when there are facts supporting a reasonable suspicion that the individual entered into the United States in violation of a federal criminal law," while noting separately that "a deputy should not detain any individual, for any length of time, for a civil violation of federal immigration laws or a related civil warrant." Detaining individuals to determine their immigration status is prohibited under KWW. RCW 10.93.160(7). Moreover, Policy 428.4 does not explain what facts might lead a Deputy to believe an individual has "entered into the United States in violation of a federal criminal law," increasing the risk of Deputies illegally profiling individuals on the basis of their race, ethnicity, or nationality, in violation of both the state and federal constitutions.

Second, Policy 428.6 (Information Sharing) refers to 8 U.S.C. § 1373 (Section 1373), and provides "No member of this office will prohibit, or in any way restrict, any other member from doing any of

ATTORNEY GENERAL OF WASHINGTON

November 28, 2022
Page 3

the following regarding the citizenship or immigration status, lawful or unlawful, of any individual . . . Sending information to, or requesting or receiving such information from federal immigration officials . . . ." The Policy implies incorrectly that Deputies may freely share any information, including personally identifiable information, with federal immigration authorities. However, Section 1373 does not apply to personal information other than immigration or citizenship status, such as birthdate, address, location, or release date. Thus, your staff should not be sharing such information with federal immigration authorities unless it is clearly connected to a criminal matter. *See* RCW 10.93.160(4)(b), (5). Moreover, nothing in Section 1373 requires state or local law enforcement agencies to collect citizenship or immigration information from their constituents, or share that information with federal immigration authorities, as Policy 428.6 seems to imply. KWW, as noted above, prohibits the collection of such information unless it is directly connected to an ongoing state or local criminal investigation.

Based on the foregoing, the Attorney General's Office is concerned that the Adams County Sheriff's Office may be in violation of KWW and other civil rights laws. I request an opportunity to meet with you to discuss these issues and strategies your office may employ to ensure compliance with state law. I am available at the following dates and times:

- Monday, December 5, 2022: 9:00AM-1:00PM
- Tuesday, December 6, 2022: 11:00AM-1:00PM
- Thursday, December 8, 2022: 11:00AM-4:00PM
- Monday, December 12, 2022: 9:00AM-2:30PM
- Tuesday, December 13, 2022: 9:00AM-3:00PM

Please confirm a date and time that works for you, and I will circulate a remote meeting invitation. Please feel free to invite anyone else on your staff who should also participate.

I look forward to meeting with you.

Sincerely,

EMILY C. NELSON
Assistant Attorney General
206-342-6405
emily.nelson@atg.wa.gov

Encl.
cc:     Randy Flyckt, Adams County Prosecutor

# Exhibit B

**Young, Logan (ATG)**

| | |
|---|---|
| **From:** | Nelson, Emily C (ATG) |
| **Sent:** | Monday, February 6, 2023 4:00 PM |
| **To:** | Randy Flyckt |
| **Cc:** | Riese, Mitchell A (ATG) |
| **Subject:** | Keep Washington Working compliance - Adams County Sheriff's Office |

Dear Mr. Flyckt:

Thank you for meeting with us in Ritzville on January 12. As we discussed at our meeting and in our letter of November 28, 2022, to Sheriff Wagner, we are concerned that Adams County has violated the Keep Washington Working (KWW) Act, RCW 10.93. We write to follow up on those concerns and request a response from Sheriff Wagner.

As you know, our November 28, 2022, letter set out several legal provisions of KWW applicable to local law enforcement agencies like the Adams County Sheriff's Office. We also explained that we had reviewed hundreds of communications between officials with the Adams County Sheriff's Office and federal immigration officials, from May 2019 (the effective date of KWW) to December 2021. We detailed the ways in which certain contacts violate the terms of KWW.

Following your receipt of our office's letter, you requested a meeting to discuss our concerns. Accordingly, on January 12, 2023, we joined you in Ritzville for an in-person meeting to review the factual and legal bases for our legal concerns. As we discussed during our meeting, it appears that Adams County has repeatedly violated certain provisions of KWW. In particular, we understand that the Adams County Sheriff's Office has provided nonpublicly available personal information about individuals to federal immigration authorities in noncriminal matters, and has proactively contacted federal immigration authorities to provide information from "new in-custody" lists of Adams County Jail inmates. Further, we understand that the Sheriff's Office aided federal immigration officials in locating an individual for purposes of civil immigration enforcement. We also have concerns about provisions of Policy 428.4 and 428.6 in the Adams County Sheriff's Office Policy Manual, which we describe in our November 28 letter.

The Attorney General's Office (AGO) is available to provide Adams County with guidance, model policies and training recommendations for compliance with KWW. The AGO is also committed to ensuring that local jurisdictions are meeting the obligations of KWW and we reserve the right to exercise all legal options to ensure compliance with KWW.

We agreed to revisit these concerns about a month after you had the opportunity to discuss them with your clients. Therefore, please respond by February 17, 2023, with Adams County's position on the issues raised in our November 28 letter, and at our January 12 meeting. If you believe it will be helpful in expediting compliance with KWW, we are available to meet with you and your clients in person, once we have received their answer.

We look forward to hearing from you.

Sincerely,


Emily C. Nelson (she/her)
Assistant Attorney General
Wing Luke Civil Rights Division
(206) 342-6405
emily.nelson@atg.wa.gov

# Exhibit C



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue • Suite 2000 • MS TB 14 • Seattle WA 98104
(206) 464-7744

September 20, 2023

**VIA E-MAIL**

Randy Flyckt
Adams County Prosecutor
210 West Broadway Avenue
Ritzville, WA 99169

RE:    **Adams County Sheriff's Response to Public Records Request No. 23-121**

Dear Mr. Flyckt:

I write regarding the Adams County Sheriff's Office's response to Public Records Request No. 23-121. After reviewing the records produced, I have concerns with the Sheriff's Office's compliance with the Public Records Act (PRA) and the Keep Washington Working Act (KWW). I identify the background of my request and my concerns with the response from the Sheriff's Office below.

On April 10, 2023, I submitted a public records request to the Sheriff's Office seeking:

> All written communications between employees of your agency and the U.S. Department of Homeland Security, including Immigration and Customs Enforcement (ICE) and/or Customs and Border Protection (CBP), during the period from January 1, 2022 through April 10, 2023. This may include emails, memos, meeting minutes, or any other documentation of communication between the requested parties, including emails exchanged with any address ending in @ice.dhs.gov or @cbp.dhs.gov.

On June 1, 2023, I received the Sheriff's Office response by email[1] with a 771-page PDF titled "Redacted" that contains redacted records, and a one-page PDF titled "Redactions 23-121," which states in part:

> Due to the nature of some of the crimes discussed and the fact that some of the emails requested contain non-conviction data, the names and identifying information for private individuals were redacted under RCW 42.56.050: A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the

---

[1] I have enclosed a copy of the email and its attachments for your reference.

ATTORNEY GENERAL OF WASHINGTON

September 20, 2023
Page 2

person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.

The response email stated the request was "closed" and included a copy of the request noted as having been "completed" on June 1, 2023. The response does not identify that any records were withheld. I have three concerns with the production from the Sheriff's Office.

First, it appears that the Sheriff's Office withheld a substantial number of records responsive to request No. 23-121, and may have altered or deleted the metadata of some original email files to remove certain information and attachments before producing them. For example, a January 25, 2023, email from Corrections Deputy Mason Boyes to ICE officer Lonnie R. Miller and other recipients includes "NEW INCUSTODY FORM.docx" as an attachment, but the attachment was not produced. A March 12, 2023 email from Corporal Evan Armstrong to CBP agent Caleb R. Sullivan includes a probable cause statement as an attachment but again, the attachment was not produced, and all identifying information about the individual named in the statement is redacted. Similarly, a March 16, 2023, email from Corrections Deputy Trina Oviatt with the subject "NEW IN CUSTODY LIST," to Adams County courts and ICE officer Lonnie R. Miller indicates that an attachment is included, but the name of the document in the attachment field appears to have been removed entirely.

It also appears that the Sheriff's Office has not withheld or redacted information, or asserted RCW 42.56.050 as an exemption, in response to other requests seeking the same records. Agencies may not distinguish between requestors and must make disclosable records available to "any person." RCW 42.56.080. Nevertheless, as the above examples illustrate, the Sheriff's Office in many cases *proactively shared* the same records sought by request No. 23-121 in un-redacted form to ICE and CBP, without any concern for the privacy of the individuals whose information was contained in the records produced to those agencies. I also understand the Sheriff's Office produced the same records sought by request No. 23-121, with no withholding, exemptions, or redactions, to the UW Center for Human Rights. The Sheriff's Office must be consistent in the manner in which it asserts any exemption under the PRA.

Second, the Sheriff's Office has not identified any of the records it determined are exempt under RCW 42.56.050,[2] and withheld from production in response to request No. 23-121. Under the law, "an agency withholding or redacting any record must specify the exemption *and* give a brief explanation of how the exemption applies to the document." *Sanders v. State*, 169 Wn.2d 827, 846, 240 P.3d 120 (2010) (citing RCW 42.56.210(3)). Our office requires document-specific information to understand the full extent to which the Sheriff's Office has asserted the exemption, including how many documents were withheld under the exemption, and whether invocation of the exemption as to any particular document appears proper.

---

[2] The Sheriff's Office has not articulated an independent basis to assert the PRA's privacy exemption. RCW 42.56.050 provides that it does not "create any right of privacy beyond those rights that are specified in [the PRA] as express exemptions from the public's right to inspect, examine, or copy public records." The Sheriff's conclusory assertion that the records "would be highly offensive to a reasonable person" and are "not of legitimate concern to the public" is insufficient to justify redacting and/or withholding records. *See e.g.*, *King Cnty. v. Sheehan*, 114 Wn. App. 325, 344, 57 P.3d 307 (2002) ("Under Washington's Act, *both* a privacy interest *and* a lack of legitimate public interest must be present to establish this exemption.").

ATTORNEY GENERAL OF WASHINGTON

September 20, 2023
Page 3

Finally, the response to request No. 23-121 underscores our concerns regarding whether the Adams County Sheriff's Office complies with KWW. In our November 22, 2022, letter to Sheriff Wagner, we identified several practices that appeared to be in violation of KWW, such as the proactive sharing of non-public, personal identifying information about detained persons with federal immigration authorities through "new in custody" lists. In light of the Sheriff's Office's invocation of RCW 42.56.050 as a basis to exempt these same "new in custody" lists from public disclosure, it appears that the lists are the type of "non-public" information KWW prohibits local law enforcement from sharing with federal immigration authorities. The Sheriff's Office cannot proactively share non-public information with federal immigration authorities for the apparent purpose of alerting them to when certain individuals are in custody, while also declining to provide that same information to the Attorney General's Office.

We request that the Adams County Sheriff's Office take the following actions upon receipt of this letter:

1)  Within 21-days, disclose all records responsive to request No. 23-121 that were withheld under RCW 42.56.050, and produce any records that the Sheriff's Office determines may have been improperly withheld;

2)  Immediately cease sharing non-publicly available personal information with federal immigration authorities, except as required by state or federal law, as required by KWW; and

3)  Implement the revisions to Adams County Sheriff's Office Policy 428.4 (Immigration Violations – Enforcement) and Policy 428.6 (Information Sharing) described in our November 22, 2022, letter.

Please note that the Sheriff's Office must retain all records responsive to request No. 23-121—even those scheduled for destruction under any retention schedule—until they have been disclosed and produced. *See* RCW 42.56.100.

Please feel free to contact me with any questions, or if you wish to schedule a meeting to discuss the above issues.

Sincerely,

EMILY C. NELSON
Assistant Attorney General
206-342-6405
emily.nelson@atg.wa.gov

Encl.

# Exhibit D



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue • Suite 2000 • MS TB 14 • Seattle WA 98104
(206) 464-7744

November 26, 2024

**VIA U.S. MAIL AND E-MAIL**

Randy Flyckt
Adams County Prosecuting Attorney
210 West Broadway Avenue
Ritzville, WA 99169

RE:    **Adams County Sheriff's Office Compliance with Keep Washington Working Act**

Dear Mr. Flyckt:

We write regarding actions of the Adams County Sheriff's Office that violate the Keep Washington Working Act (KWW). As you know, over the last 18 months the Attorney General's Office (AGO) has made several efforts to address the Sheriff's Office's violations of KWW, including through multiple communications with your office, an in-person meeting with you in Ritzville, and additional follow up virtual meetings and calls. The AGO's efforts to achieve voluntary compliance have not been successful. Therefore, the purpose of this letter is to inform you that the Attorney General's Office is prepared to file a complaint against Adams County in Spokane County Superior Court. Before proceeding with litigation, we request a final meeting to discuss whether Adams County will take action to resolve the AGO's concerns.

The AGO's concerns are not new. We first contacted you about this issue on November 28, 2022, and we discussed KWW compliance over the next several months. Then, during an October 2, 2023, call with you, we addressed our concerns with the Sheriff's Office's continuing violations of KWW and lack of progress on revising its policies. You indicated you would communicate with the Sheriff and circle back with us. On October 26, 2023, we had another call in which you communicated that the Sheriff had directed jail and dispatch staff to stop emailing "in custody" lists to U.S. Immigration and Customs Enforcement (ICE). The Sheriff also stated that his office would not honor any ICE detainers unless they were warrants issued by a court, and that he was working on making the necessary updates to the Sheriff's Office Policy Manual. We were pleased to hear that the County was taking action to comply with the law.

However, our investigation revealed that, in fact, the Sheriff's Office continued to share "in custody" lists with federal immigration officials after the Sheriff's representation to you that the practice had ended. We also learned that the Sheriff's Office updated its Policy Manual on December 4, 2023, without making any changes to the sections we highlighted regarding the Sheriff's Office's improper enforcement of federal civil immigration law, in violation of KWW.

ATTORNEY GENERAL OF WASHINGTON

November 26, 2024
Page 2


In light of the continued violations of KWW, the Attorney General has authorized the filing of a complaint seeking declaratory and injunctive relief against Adams County. A draft of the complaint is attached for your reference. However, we continue to believe it would be better for all involved to reach a voluntary resolution and avoid litigation over the Sheriff's Office's practices. To that end, the AGO is willing to defer filing the complaint for a limited time if the Sheriff's Office agrees to voluntarily resolve the violations of KWW that we have identified. We are open to discussing the terms of a voluntary resolution, but at a minimum, any resolution must include staff training, revisions to the Adams County Sheriff's Office Policy Manual, and ongoing compliance monitoring.

We have authority to defer filing the complaint until **January 6, 2025**. If Adams County does not wish to pursue a resolution at this time, or if we are unable to reach a final, executed agreement by January 6, the AGO will file a civil enforcement action seeking all available relief.

Thank you for your prompt attention to this matter. Please contact us directly with any questions.

Sincerely,

MITCHELL RIESE
Assistant Attorney General
206-491-9620
Mitchell.Riese@atg.wa.gov

# Exhibit E

# ARD LAW GROUP

### COMPLEX LITIGATION

Joel B. Ard

Joel@Ard.law

206.701.9243

February 20, 2025

## VIA EMAIL AND U.S. MAIL

Nicholas W. Brown
Attorney General of Washington
Mitchell A. Riese
mitchell.riese@atg.wa.gov
Emily C. Nelson
emily.nelson@atg.wa.gov
Assistant Attorneys General
1125 Washington St. SE
PO Box 40100
Olympia, WA 98504
(360) 753-6200

Re:    Proposed Consent Decree in *Washington v. Admas County*, Spokane Cnty Sup. Ct.
       (Unfiled)

Mr. Brown:

As Adams County recently informed you, Prosecuting Attorney Flyckt has appointed me as Special Deputy Prosecuting Attorney for Adams County. My remit comprises "representing Adams County and the Adams County Sheriff concerning any matters relating to the Keep Washington Working Act (Sanctuary State Statute); including without limitation, any threatened or actual litigation initiated by the office of the Attorney General of Washington." To that end, I will be working with America First Legal Foundation and Cooper & Kirk to protect the legal interests of our client, Adams County. Please direct any future correspondence on that topic to me.

Adams County simply desires to follow federal immigration law and to cooperate with the lawful requests of federal officials. Indeed, 8 U.S.C. § 1373 specifically preempts State law and mandates that a State "may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

Furthermore, it is a crime under federal law to "conceal[], harbor[], or shield[] from detection" "an alien [who] has come to, entered, or remains in the United States in violation

ARD LAW GROUP PLLC

P.O. Box 281
Kingston, WA 98346
Phone: (206) 701-9243

# ARD LAW GROUP

### COMPLEX LITIGATION

of law," or who attempts to do so. 8 U.S.C. § 1324(a)(1)(A)(iii). Similarly, it is a crime if an individual "encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law."8 U.S.C. § 1324(a)(1)(A)(iv). It is also a crime to aid and abet the above violations or to engage in conspiracy to commit them. 8 U.S.C. § 1324(a)(1)(A)(v). It is also a crime to "conspire ... to commit any offense against the United States" or to "conspire to prevent ... any person from ... discharging any duties" of "any office, trust, or place of confidence under the United States." 18 U.S.C. §§ 371-72. Finally, it is a crime to "engage[] in misleading conduct toward another person ... to ... cause or induce any person to ... be absent from an official proceeding to which such person has been summoned by legal process." 18 U.S.C. § 1512(b)(2)(D) and (b)(3).

In other words, Adams County has obligations under federal law that directly conflict with the Sanctuary State Statute.

Cooperating with federal immigration officials makes Adams County a safer and more prosperous community for Washingtonians. One example, which the Adams County Prosecuting Attorney has provided to your Office, concerns a convicted sex offender alien who was residing in the County. Adams County did not impede the efforts of federal officials, and the convicted sex offender alien was, fortunately, removed from the County. Your Office, however, apparently seeks to end such cooperation, allowing sex offenders to freely roam the streets of the state with more impunity than lawful citizens.

Federal law is supreme over state law, and Adams County cannot discriminate against the federal government and its immigration enforcement efforts, nor can the County impede these efforts, as the Sanctuary State Statute requires. As the Supreme Court made clear in *Arizona v. United States*, "[t]he federal power to determine immigration policy is well settled … There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." 567 U.S. 387, 395, 399 (2012).

In conformity with federal law and in recognition of the immigration crisis that developed under the previous presidential administration, President Trump has directed federal officials to take all appropriate action to fully enforce the immigration laws of the United States. *See* Exec. Order 14165, Securing Our Borders, 90 F.R. 8467 (Jan. 30, 2025). U.S. Attorney General Pamela Bondi has also directed the U.S. Department of Justice to investigate and prosecute state and local jurisdictions and officials that impede, obstruct, or otherwise fail to comply with lawful immigration-related directives. U.S. Att'y Gen., Sanctuary Jurisdiction Directives (Feb. 5, 2025), https://perma.cc/Q8BH-AHAN. She has also instructed that sanctuary jurisdictions "not receive access to federal grants administered by the Department of Justice." *Id.* at 1.

ARD LAW GROUP PLLC

P.O. Box 281
Kingston, WA 98346
Phone: (206) 701-9243

# ARD LAW GROUP

### COMPLEX LITIGATION

Indeed, over the past few weeks, the United States has sued state and local officials in Illinois and state officials in New York over their sanctuary policies. *See* Complaint, *United States v. Illinois*, Case No. 1:25-cv-1285 (N.D. Il. Feb. 6, 2025), available at https://perma.cc/5FZA-QFYM); Complaint, *United States v. New York*, Case No. 1:25-CV-0205 (S.D.N.Y. Feb 12, 2025), available at https://perma.cc/9LQ7-QN2P. The statutory basis for those lawsuits includes many of the statutes cited in this letter.

Adams County respectfully requests that your Office end its plans to sue Adams County over its efforts to comply with federal law and keep Washingtonians safe. We expect that decisions in the Illinois and New York cases will clarify whether sanctuary policies such as the one your Office is attempting to enforce against Adams County are lawful. In the meanwhile, the State and County have better ways to use taxpayer resources. The State proceeding with a lawsuit against Adams County would do a disservice to the people of Washington.

Yours,

Joel B. Ard

ARD LAW GROUP PLLC

ARD LAW GROUP PLLC

P.O. Box 281
Kingston, WA 98346
Phone: (206) 701-9243

# Exhibit F

notice, urging them to follow federal immigration law and SHIELD. CLICK HERE to join the fight!



# America First Legal Defends Adams County, Washington Against Unlawful Sanctuary State Laws

February 26, 2025

Array





**WASHINGTON, D.C.** – America First Legal (AFL), supported by Cooper & Kirk PLLC and Ard Law Group, is taking action to defend Adams County, Washington, against the unlawful and abusive effort by Washington state officials to enforce illegal and

Case 2:25-cv-00209-RMP   ECF No. 1-2   filed 03/28/25   PageID.51   Page 46 of 50

dangerous sanctuary laws and policies and compel Adams County to violate federal immigration laws.

Last year, Washington state officials threatened to sue Adams County for refusing to comply with the harmful, dangerous, and illegal sanctuary jurisdiction law fraudulently titled the "*Keep Washington Working Act*." Now, these officials are unlawfully attempting to force Adams County to sign a "consent decree" that will compel it to violate federal law for the next four years.

To protect American citizens and our Constitution, Adams County is standing up in opposition to this egregious abuse of state power. AFL is defending Adams County so that state officials and their anti-American open-border allies may not bully, coerce, or compel pro-American communities with dangerous sanctuary laws and policies that shield criminal illegal aliens and endanger law-abiding citizens.

AFL has previously warned Washington Governor Jay Inslee and other Washington state officials that sanctuary policies are illegal, and that state officials who attempt to compel local jurisdictions to enforce them may face very direct consequences. On December 23, 2024, AFL sent letters to 250 state and local officials, notifying them of the legal consequences they could face for interfering with or impeding federal immigration enforcement and for concealing, harboring, or shielding illegal aliens.

AFL will continue to fight relentlessly alongside Adams County and other principled patriots to protect American sovereignty, uphold the rule of law, and terminate illegal and dangerous sanctuary laws and policies.

### Statement from James Rogers, America First Legal Senior Counsel:

"Federal law is clear: it is a crime to conceal, harbor, or shield illegal aliens, and it is a crime to prevent federal officials from discharging their duties. It is also against federal law to prevent local officials from communicating with DHS about the immigration status of individuals. Our nation's immigration laws reflect the democratic will of the people, and it is outrageous that the State of Washington has been working to subvert it while at the same time facilitating the invasion of our country. It is even more disgraceful that the State of Washington would target one of its own counties because the officials there have the courage to follow the law and have been cooperating with ICE to help keep our country safe. America First Legal is proud to stand with Adams County and will fight vigorously to protect it from this bullying," said James Rogers.

Follow us on social media for the latest updates on America First Legal's fight to protect your constitutional rights!

X, Facebook, Instagram, Truth Social, YouTube

For press inquiries, please contact press@aflegal.org.

Photo credit: *Adobe Stock Images/Gorodenkoff*

# Stay Informed

Get updates about the legal battles we are waging across the country. **To Get Critical Updates By Text: Text Join to 50608**.

SIGN UP

☐ I would like to Subscribe!

   

611 PENNSYLVANIA AVE SE #231
WASHINGTON, DC 20003

AMERICA FIRST LEGAL FOUNDATION IS AN IRS-APPROVED
SECTION 501(C)(3) PUBLIC CHARITY. YOUR DONATION TO
AMERICA FIRST LEGAL FOUNDATION IS TAX-DEDUCTIBLE TO THE
EXTENT ALLOWED BY LAW.

SUBMIT

© 2025 AMERICA FIRST LEGAL | PRIVACY POLICY & TERMS OF USE