1  NICHOLAS W. BROWN
   Attorney General
2  EMILY C. NELSON
   BENJAMIN SEEL
3  Assistant Attorneys General
   Attorney General of Washington
4  Wing Luke Civil Rights Division
   800 Fifth Avenue, Suite 2000
5  Seattle, WA 98104
   (206) 464-7744
6

7

8              **UNITED STATES DISTRICT COURT**
9              **EASTERN DISTRICT OF WASHINGTON**

10  STATE OF WASHINGTON,               NO. 2:25-cv-00099-RLP

11              Plaintiff,             STATE OF WASHINGTON'S
                                       MOTION TO REMAND
12      v.
                                       JUNE 10, 2025
13  ADAMS COUNTY SHERIFF'S             With oral argument:
    OFFICE, ADAMS COUNTY               2:00 p.m., Spokane
14
                Defendants.
15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION TO
REMAND

# I.    INTRODUCTION

1

2    Defendants Adams County and the Adams County Sheriff's Office are

3   entitled to removal only if Washington could have filed its lawsuit in this Court

4   in the first place. It couldn't have. This is a case about enforcement of a state

5   law—the Keep Washington Working Act (KWW)—and state priorities,

6   including how law enforcement agencies should use their limited time and

7   resources. The State brought an action for declaratory judgment against

8   Defendants in state court after they refused to comply with that law. The State

9   pleaded no federal law claims and the Court need not resolve any federal law

10  questions to determine whether Adams County and the Adams County Sheriff's

11  Office violated state law. Remand is warranted because this Court lacks

12  jurisdiction over the State's sole claim.

13    Nearly a hundred years of precedent establishes that "federal jurisdiction

14  exists only when a federal question is presented on the face of the plaintiff's

15  properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

16  (1987) (citing *Gully v. First Nat'l Bank*, 299 U. S. 109, 112–113 (1936)). The

17  law is clear—Defendants cannot create federal court jurisdiction by merely

18  raising a federal defense, "even if the defense is anticipated in the plaintiff's

19  complaint, and even if both parties concede that the federal defense is the only

20  question truly at issue." *Caterpillar*, 482 U.S. at 393. Defendants' numerous

21  federal defenses are therefore beside the point. *Cf.* ECF No. 2 at 23–24 (Answer

22  pleading seven federal affirmative defenses).

PLAINTIFF'S MOTION FOR
REMAND

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
206-464-7744

1    Faced with a wall of contrary precedent, Defendants argue instead that this

2    case is exceptional and among the small number of cases that raise a "substantial

3    federal question" that is lurking but nevertheless essential to the case's

4    disposition. That argument also fails. An action brought by a state, in its own

5    courts, seeking a declaration of rights and obligations under state law, does not

6    create a substantial federal question.

7    Because Defendants' removal is expressly foreclosed by binding

8    precedent, this Court should remand this matter back to Spokane County Superior

9    Court. The Court should also award the AGO its costs and attorney fees because

10   Defendants' removal was unreasonable.

11   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

12   On March 10, 2025, the State sued Adams County and the Adams County

13   Sheriff's Office in Spokane County Superior Court after years of attempting to

14   cooperatively resolve Defendants' KWW violations without litigation. ECF No.

15   1–2 ¶¶ 4.1–4.56 (Complaint). The State brings a single cause of action under

16   Washington's Uniform Declaratory Judgments Act, Wash. Rev. Code § 7.24

17   (UDJA), and alleges that Defendants violated multiple provisions of KWW.

18   Complaint ¶¶ 5.1–5.11. The State also seeks an injunction prohibiting Defendants

19   "from continuing or engaging in the unlawful conduct" alleged in the State's

20   Complaint. *Id.* ¶ 6.3

21   Like a host of other state statutes, KWW regulates the scope of

22   enforcement authority, conduct, and activities of state and local law enforcement.

PLAINTIFF'S MOTION FOR
REMAND

2

1    It makes clear that it is not their job to engage in civil immigration enforcement.

2    *See* Wash. Rev. Code § 10.93.160(2). Consequently, they may not use their time

3    or resources to assist in such enforcement, unless expressly required by federal

4    law, or in situations where public safety is directly implicated.

5         For example, under KWW, local law enforcement cannot use nonpublic

6    information for civil immigration enforcement or share that information for

7    federal immigration purposes. Wash. Rev. Code §§ 10.93.160(4), (5). But these

8    limits do not apply to requests for nonpublic information made in connection with

9    a criminal matter, or to requests for citizenship or immigration status made by

10   federal authorities pursuant to 8 U.S.C. § 1373. *See* Wash. Rev. Code

11   § 43.17.425; 2019 Wash. Sess. Laws, ch. 440, § 8. And KWW further authorizes

12   the Washington State Department of Corrections to share nonpublic information

13   with federal immigration officials for the purpose of detaining and/or deporting

14   individuals convicted of felonies. Wash. Rev. Code § 10.93.160(15).

15        KWW also recognizes that assisting with civil immigration enforcement

16   can risk constitutional violations and put Washington law enforcement officers

17   themselves at risk of liability. The law therefore prohibits law enforcement from

18   detaining an individual or holding them in custody solely for the purpose of

19   determining their immigration status or solely based on a civil immigration

20   detainer or warrant. Wash. Rev. Code §§ 10.93.160(7), (8). This helps reduce

21   instances in which state and local jurisdictions run afoul of constitutional

22   prohibitions on unreasonable search and seizure, which have cost taxpayers

PLAINTIFF'S MOTION FOR REMAND

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

across the country, including here in Washington, tens of millions of dollars in settlements and legal fees paid to wrongfully detained individuals to resolve civil rights lawsuits against cities and counties.[1] *See Arizona v. United States*, 567 U.S. 387, 413 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."). Here again though, KWW in no way

---

[1] *See* Stipulated Mot. to Dismiss, Ex. A, *Mendoza Garcia v. Okanogan County., et al.*, No. 2:19-CV-00340 (E.D. Wash. Mar. 25, 2020), ECF No. 23 (settlement of $50,000 to resolve claims that County unlawfully held plaintiff in county jail for two days after she had been released on her own recognizance); Notice of Settlement, *Ahumada-Meza v. City of Marysville et al.*, No. 2:19-CV-01165 (W.D. Wash. Nov. 26, 2019), ECF No. 12 (settlement of $85,000 to resolve claims that City unlawfully detained plaintiff overnight pursuant to civil immigration request); Status Report and Notice of Settlement Agreement, Ex. A, *Gomez Maciel v. Coleman and City of Spokane*, No. 2:17-CV-00292 (E.D. Wash. Dec. 13, 2017), ECF No. 20 (settlement of $49,000 to resolve claims that police officer unlawfully arrested the victim of traffic accident in order to turn them over to civil immigration agents); Notice of Settlement, *Rodriguez Macareno v. Thomas, et al.*, No. 2:18-CV-00421 (W.D. Wash. May 28, 2019), ECF No. 83 (settlement of undisclosed amount to resolve claims that Tukwila police officers seized plaintiff—a victim of a crime who sought police assistance—and transferred him to custody of federal immigration authorities); Judgment, *Olivera Silva v. Campbell, et al.*, No. 1:17-CV-03215 (E.D. Wash. Sept. 24, 2018), ECF No. 60 (judgment of $10,000 in damages and $141,986.70 in attorney fees after Yakima County jail continued to detain plaintiff based on immigration detainer); Settlement Agreement, *Sanchez Ochoa v. Campbell, et al.*, No. 1:17-CV-03124 (E.D. Wash. Feb. 6, 2019), ECF No. 129 (settlement of $25,000 to resolve claims that Yakima County unlawfully detained individual based on civil immigration warrants); *City of Bellingham City Council Regular Meeting 7/12/2021 Minutes*, 6 (July 12, 2021), available at: City_Council_Regular_Meeting_2436_Minutes_7_12_2021_7_00_00_PM.pdf (Bellingham City Council authorizing settlement of $100,000 to resolve claims arising from stop in which City of Bellingham police inquired about plaintiff's immigration status and contacted federal immigration authorities, resulting in his arrest and detention).

PLAINTIFF'S MOTION FOR REMAND

4

1    prohibits state or local law enforcement from complying with criminal warrants

2    issued by a federal judge or magistrate. *See* Wash. Rev. Code § 10.93.160(16)(b).

3    Further, KWW prohibits local law enforcement from granting federal

4    immigration authorities access to interview a person in their custody about a

5    noncriminal matter unless access is required by state or federal law, a court has

6    ordered that such access be granted, or the individual has consented in writing to

7    be interviewed. Wash. Rev. Code § 10.93.160(6). As with the examples cited

8    above, this prohibition does not apply when federal immigration officials seek to

9    interview someone in local law enforcement custody about a criminal matter. *Id.*

10    In its Complaint, the State alleges that Defendants repeatedly violated

11    KWW when they (1) shared nonpublic, personal information with federal

12    immigration authorities at least 212 times without any connection to a criminal

13    matter; (2) held individuals based solely on civil immigration detainers and/or

14    warrants from federal immigration officials; (3) allowed federal immigration

15    officials to interview individuals in custody about noncriminal matters without

16    obtaining the individual's consent; and (4) failed to adopt Sheriff's Office

17    policies that align with KWW. Complaint ¶¶ 4.33–4.43. Anticipating the

18    Defendants' defenses that federal immigration law preempts KWW, the State

19    also explained in its Complaint why KWW aligns with federal law. *Id.* ¶¶ 4.1–

20    4.32.

21    Defendants removed the State's enforcement action on the ground that the

22    Court has federal question jurisdiction under 28 U.S.C. § 1331. They contend the

PLAINTIFF'S MOTION FOR
REMAND

5

1  State's Complaint "alleges a question of federal law on its face," and "raises a

2  substantial federal question." *See* ECF No. 1 ¶ 10 (Notice of Removal); *see also*

3  *id.* ¶ 16. On April 2, 2025, Defendants filed their Answer to the State's Complaint

4  in this Court, raising ten affirmative defenses and alleging, among other things,

5  that KWW violates the Supremacy Clause because it is preempted and barred

6  under the doctrine of intergovernmental immunity. Answer at 23–24.

7  ## III.    ARGUMENT

8  Defendants' removal of the State's declaratory judgment action was

9  improper for two related reasons. First, it is axiomatic that under the well-pleaded

10  complaint rule, raising a federal defense in answer to a complaint does not confer

11  federal question jurisdiction on this Court. This is true even though Defendants

12  claim federal law preempts KWW and excuses their violations of Washington

13  law. Second, Defendants cannot show that the State's claims create a substantial

14  federal question because the Supreme Court has made clear that only a "special

15  and small category" of state law claims nevertheless arise under federal law.

16  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice*

17  *Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). And, try as they might,

18  Defendants cannot shoehorn the State's enforcement of KWW into that "'special

19  and small category' of cases." *Id*. The Supreme Court has consistently held that

20  an action brought by a state in state court seeking an interpretation of state law

21  does not create a substantial federal question, regardless of whether it would

22  require the state court to interpret and apply federal law. This Court should

1  remand and award the State its attorney fees and costs incurred because of

2  Defendants' unreasonable removal.

3  **A.    Under the Well-Pleaded Complaint Rule, Defendants Cannot Remove the State's Case by Asserting Federal Law as a Defense**

4

5  Because federal courts are courts of limited jurisdiction, they are

6  "presumed to lack jurisdiction in a particular case unless the contrary

7  affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville

8  Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). In actions removed from state court,

9  the federal court possesses jurisdiction only if it is clear from the face of the

10  complaint that the state court action "could have been filed in federal court" in

11  the first instance. *See Caterpillar*, 482 U.S. at 392. Both the removal and subject

12  matter jurisdiction statutes are strictly construed. *Lake v. Ohana Mil. Cmtys.,

13  LLC*, 14 F.4th 993, 1000 (9th Cir. 2021). As the removing parties, Defendants

14  have the burden "to establish that removal is proper and any doubt is resolved

15  against removability." *Id.* (quoting *Luther v. Countrywide Home Loans Servicing

16  LP*, 553 F.3d 1031, 1034 (9th Cir. 2008)) (internal quotation marks omitted).

17  Defendants assert federal question jurisdiction under 28 U.S.C. § 1331 as

18  their basis for removal. Notice of Removal at 1. That statute provides that federal

19  courts "shall have original jurisdiction of all civil actions arising under the

20  Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case can

21  "arise under" federal law when federal law creates the cause of action asserted,

22  or when a state law claim raises a "substantial federal question." *Negrete v. City*

1  *of Oakland*, 46 F.4th 811, 817 (9th Cir. 2022) (citing *Gunn*, 568 U.S. at 257–58).

2  The "vast bulk of suits that arise under federal law" are those that plead a federal

3  cause of action, while only a "slim category" of state law claims will create a

4  substantial federal question sufficient to establish arising under jurisdiction.

5  *Gunn*, 586 U.S. at 257–58 (citing *Franchise Tax Bd. of State of Cal. v. Constr.*

6  *Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983)). In either scenario, the

7  "right or immunity created by the Constitution or laws of the United States must

8  be an element, and an essential one, of the plaintiff's cause of action." *Franchise*

9  *Tax Bd.*, 463 U.S. at 10–11 (quoting *Gully*, 299 U.S. at 112) (internal quotation

10  marks omitted).

11      Federal question jurisdiction "is based only on the allegations in the

12  plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise."

13  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quoting

14  *Franchise Tax Bd.* 463 U.S. at 9–10). For this reason, a state action "may *not* be

15  removed to federal court on the basis of a federal defense, including the defense

16  of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and

17  even if both parties concede that the federal defense is the only question truly at

18  issue." *Caterpillar*, 482 U.S. at 393. This rule remains steady even where the

19  complaint responds directly to predicted federal defenses. *See, e.g.*, *Franchise*

20  *Tax Bd.*, 463 U.S. at 10 ("Thus, a federal court does not have original jurisdiction

21  over a case in which the complaint presents a state-law cause of action, but also

22  asserts that . . . a federal defense the defendant may raise is not sufficient to defeat

1    the claim[.]") (internal citations omitted); *Cal. Shock Trauma Air Rescue v. State*

2    *Comp. Ins. Fund*, 636 F.3d 538, 541 (9th Cir. 2011) (holding no federal question

3    jurisdiction based on air-ambulance rescue company's inclusion of FAA

4    preemption argument in its complaint alleging only state law claims). That is

5    because "[a] defense is not part of a plaintiff's properly pleaded statement of his

6    or her claim." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089–91

7    (9th Cir. 2002) (internal quotation marks omitted) (finding no federal question

8    jurisdiction in action seeking declaration that Governor of Guam violated a Guam

9    election reform law, notwithstanding that plaintiffs had "artfully plead the

10    Governor's probable [federal law] defense").

11        Here, the question of whether the Complaint contains a well-pleaded

12    federal question is easily answered because the State could not have brought its

13    declaratory judgment claim as an original action in federal court. "For federal

14    question jurisdiction to extend to a declaratory judgment action, the claim itself

15    must present a federal question unaided by anything alleged in anticipation of

16    avoidance of defenses which it is thought the defendant may interpose." *Negrete*,

17    46 F.4th at 820 (quoting *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 673–

18    74) (internal quotation marks omitted). The State asserts a single UDJA claim

19    alleging violations of KWW, and the Complaint's only mention of federal law is

20    the State's anticipation of Defendants' rebuttal arguments. Because the State

21    could not have filed its KWW enforcement action in this Court, there is no basis

22    for Defendants to remove it. *See id.* at 818 (applying *Skelly Oil* and holding no

PLAINTIFF'S MOTION FOR REMAND       9

1    substantial federal question jurisdiction where terminated officers' complaint

2    against the city anticipated that the city would defend by asserting that a federal

3    consent decree required city to take complained of actions).

4        Nevertheless, Defendants claim that the State's Complaint raises a

5    question of federal law on its face because, "whether or not Adams County has

6    actually violated the recited state laws depends on whether or not the conduct

7    alleged was required to comply with federal law or required to maintain federal

8    funding, as explicitly stated in the state statutes alleged to have been violated."

9    Notice of Removal ¶ 9. Of course, this is just another way of raising compliance

10    with federal law as a defense to enforcement of state law, which as explained

11    above cannot serve as a basis for removal.

12        Defendants' principal contention appears to be that KWW, which through

13    its text does not compel anyone to violate state or federal law, somehow obligates

14    the State to show, as part of its prima facie case, the absence of a conflict with

15    *any* federal law, including federal laws that KWW does not mention. *See* Notice

16    of Removal ¶¶ 8–10; *see also id.* ¶¶ 14–16 (identifying 8 U.S.C. § 1324 and 18

17    U.S.C. § 1512 as additional potential sources of conflict with KWW). But

18    KWW's accommodation of federal law merely reflects the "'fundamental

19    principle in our system' . . . that 'the Constitution, laws, and treaties of the United

20    States are as much a part of the law of every State as its own local laws and

21    Constitution.'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157

22    (1982) (quoting *Hauenstein v. Lynham*, 100 U.S. 483, 490 (1880)). These types

PLAINTIFF'S MOTION FOR REMAND

10

1     of nods to federal law in state statutes are commonplace, and in no way turn every

2     such state statute into a "federal question" whose interpretation may be sought in

3     federal court. Obviously, the enforcement of state laws must comply with the

4     Constitution and federal law. But that cannot mean that every interpretation of

5     state law presents a federal question sufficient to confer jurisdiction in federal

6     court.

7          In sum, and as Defendants' Answer makes clear, the only federal issues

8     that may arise in this case are those that will be raised through Defendants'

9     affirmative defenses. *See* Answer at 23–24. That is not enough to invoke the

10    Court's limited jurisdiction. The well-pleaded complaint rule thus bars

11    Defendants from removing the State's action to enforce state law.

12    **B.     The State's Action Does Not Raise a Substantial Federal Question
            Sufficient to Confer Federal Jurisdiction**

13

14         Unable to overcome the well-pleaded complaint rule—and the mountain

15    of precedent against them—Defendants assert that allegations in the Complaint

16    preemptively addressing Defendants' federal defenses, and language in KWW

17    disclaiming any conflict with federal law, provide indicia of a substantial federal

18    question that arises under federal law. *See* Notice of Removal ¶¶ 11–16. This

19    argument, too, fails.

20         The Supreme Court has recognized "a 'special and small category' of cases

21    in which arising under jurisdiction still lies," notwithstanding that the "claim

22    finds its origins in state rather than federal law." *Gunn*, 568 U.S. at 258 (quoting

PLAINTIFF'S MOTION FOR
REMAND

11

1    *Empire Healthchoice Assurance*, 547 U.S. at 699). To fit a state law claim into

2    this "slim category," the party seeking removal must show that the federal issue

3    at play in the state law claim is: "(1) necessarily raised, (2) actually disputed,

4    (3) substantial, and (4) capable of resolution in federal court without disrupting

5    the federal-state balance approved by Congress." *Id.* at 258. All four elements

6    must be met for jurisdiction to lie. *Id.* But Defendants cannot establish at least

7    three of these essential elements.

8        First, federal law issues are not "necessarily raised" by the Complaint.

9    Such issues are only "necessarily raised" if they are an essential element of a

10   plaintiff's claim. *Negrete*, 46 F.4th at 811. This is a high bar and federal courts

11   find that federal issues, even if lurking, are not necessarily raised unless the state

12   law cause of action cannot be resolved without addressing the federal issue. *See*

13   *Lake*, 14 F.4th at 1007 (holding that "a federal issue is not necessarily raised

14   where the actions are based entirely on state causes of action each of which does

15   not, on its face, turn on a federal issue") (cleaned up); *see also Mayor & City*

16   *Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 210–11 (4th Cir. 2022) (finding

17   state law negligence claim did not raise a substantial federal issue, even though

18   one element of state law claim could have been met by showing defendant had

19   run afoul of federal regulatory standards; plaintiff could have also "avoid[ed]

20   federal law entirely" and met its burden through other means). Simply put, the

21   phrase "federal issue" is not "a password opening federal courts to any state

22

PLAINTIFF'S MOTION FOR
REMAND

12

1    action embracing a point of federal law." *Grable & Sons Metal Prods., Inc. v.

2    Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005).

3        Here, the State can obtain a declaratory judgment simply by showing that

4    Defendants engaged in the conduct proscribed by KWW: sharing nonpublic,

5    personal information with federal immigration authorities; holding individuals

6    based on civil immigration detainers; allowing federal immigration officials to

7    interview individuals in custody without obtaining consent; and failing to adopt

8    policies that comply with KWW. Complaint ¶¶ 5.1–5.2. Federal law will surface

9    if and only if it is raised by Defendants as an affirmative defense to their state

10   law violations, which is precisely how this case has so far proceeded.

11       Second, Defendants have made clear they intend to argue that KWW

12   conflicts with federal law, such that the issue may be "disputed" in this case. *See*

13   Notice of Removal ¶¶ 6–16; *Gunn*, 568 U.S. at 259. Regardless, that question

14   does not justify removal because it is insubstantial compared to "the federal

15   system as a whole." *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th

16   1179, 1185 (9th Cir. 2022) (quoting *Gunn*, 568 U.S. at 260) (internal quotation

17   marks omitted). Although the interaction between KWW and federal law is of

18   substantial importance within Washington, a decision on that question would

19   have no immediate and direct consequences anywhere else in the country.

20       The Supreme Court's decision in *Franchise Tax Board*, is instructive.

21   There, the Court determined that an action brought by a state, in its own courts,

22   seeking an interpretation of its own laws, does not raise a substantial federal

PLAINTIFF'S MOTION FOR
REMAND                                    13          ATTORNEY GENERAL OF WASHINGTON
                                                              Civil Rights Division
                                                           800 Fifth Avenue, Suite 2000
                                                              Seattle, WA 98104
                                                                206-464-7744

1    question. 463 U.S. at 21. Instead, the Court held that the California Franchise Tax

2    Board's action for declaratory judgment and damages had to be remanded to state

3    court, even though the federal issue in that case—whether the federal

4    Employment Retirement Income Security Act (ERISA) allowed the California

5    tax board to collect the disputed state income tax—was the main issue the state

6    court would need to resolve. *Id.* at 20–21. The Supreme Court explained:

7
8        There are good reasons why the federal courts should not entertain
         suits by the States to declare the validity of their regulations despite
9        possibly conflicting federal law. States are not significantly
         prejudiced by an inability to come to federal court for a declaratory
10       judgment in advance of a possible injunctive suit by a person subject
         to federal regulation. They have a variety of means by which they
11       can enforce their own laws in their own courts, and they do not
         suffer if the preemption questions such enforcement may raise are
12       tested there.

13   *Id.* at 21. These considerations hold particular weight where the dispute is of an

14   "intragovernmental nature." *See Republican Party of Guam*, 277 F.3d at 1090

15   (finding "invocation of federal jurisdiction even less appropriate" in dispute

16   between political party, legislature, and Governor of Guam).

17       The Supreme Court has explained that "the sort of substantiality" sufficient

18   to establish federal question jurisdiction may arise where the *plaintiff* brings a

19   claim that depends on the resolution of an important question of federal law—

20   not the *defendant*. *See Gunn*, 568 U.S. at 260–61. In *Gunn*, the Supreme Court

21   illustrated this point by examining two earlier cases, *Grable & Sons Metal*

22

PLAINTIFF'S MOTION FOR
REMAND

14

1    *Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), and

2    *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180 (1921).

3        In *Grable & Sons,* 545 U.S. at 314, the Supreme Court considered whether

4    a "substantial" federal issue was presented by a state law quiet title action

5    alleging that the property at issue had been seized and sold by the Internal

6    Revenue Service without observance of mandatory federal notice requirements.

7    In light of the federal government's "direct interest in the availability of a federal

8    forum to vindicate its own administrative action," the *Grable* Court found that

9    the quiet title action raised "an important issue of federal law that sensibly

10   belong[ed] in a federal court." *Id.* at 315.

11       Likewise, in *Kansas City Title & Trust Co.*—described by the Supreme

12   Court "as '[t]he classic example' of a state claim arising under federal law,"

13   *Gunn*, 568 U.S. at 261—a plaintiff sued under Missouri law seeking to prevent a

14   bank from buying federally issued farm bonds that were allegedly "beyond the

15   constitutional power of Congress" to issue. *Kansas City Title & Trust Co.,* 255

16   U.S. at 195. The Court held that the state law claim arose under federal law not

17   because it involved a federal constitutional question, but because the answer to

18   that question would have nationwide importance for all holders of the federal

19   Government-issued securities. *Id.* at 201–02.

20       The State's action here is "poles apart" from these examples because a

21   determination by a Washington state court regarding the interplay of KWW and

22   Defendants' various federal defenses will not "undermine the development of a

PLAINTIFF'S MOTION FOR REMAND

15

1  uniform body" of federal immigration or criminal law—even if Defendants were

2  correct that KWW violates the Supremacy Clause or somehow conflicts with

3  federal criminal laws. *See Gunn*, 568 U.S. at 261–62 (quoting *Empire*

4  *Healthchoice Assurance*, 547 U.S. at 700) (internal quotation marks omitted).

5  The Supreme Court has recognized that state courts are more than capable of

6  interpreting and applying federal law and do so regularly, including federal

7  criminal law. *See id*. at 262 (citing *Tafflin v. Levitt*, 493 U.S. 455, 465 (1990)

8  ("State courts adjudicating civil RICO claims will . . . be guided by federal court

9  interpretations of the relevant federal criminal statutes, just as federal courts

10 sitting in diversity are guided by state court interpretations of state law . . . . State

11 court judgments misinterpreting federal criminal law would, of course, also be

12 subject to direct review by this Court.")); *see also Arizona*, 567 U.S. at 415

13 (finding it "inappropriate to assume" that, left in the hands of state courts, a state

14 law would "be construed in a way that creates a conflict with federal law").

15     Indeed, Washington courts have ample federal precedent to look to, as

16 nearly all of the issues Defendants will likely raise have already been rejected by

17 the Ninth Circuit. *See City & County of San Francisco v. Barr*, 965 F.3d 753, 763

18 (9th Cir. 2020) (holding 8 U.S.C. § 1373 does not require law enforcement to

19 collect or share information with federal immigration authorities outside of

20 discrete citizenship or immigration status information); *City & County of San*

21 *Francisco v. Garland*, 42 F.4th 1078, 1085 (9th Cir. 2022) (discussing multiple

22 cases holding same); *United States v. California*, 921 F.3d 865, 887 (9th Cir.

PLAINTIFF'S MOTION FOR REMAND                16

1    2019), *cert denied* 141 S. Ct. 124 (2020) (holding that California law prohibiting

2    law enforcement from honoring non-judicial immigration detainers "does not

3    directly conflict with any obligations that the INA or other federal statutes impose

4    on state or local governments, because federal law does not actually mandate any

5    state action" except as to the sharing of citizenship and immigration status

6    information).

7           Finally, whether KWW conflicts with federal law or otherwise violates the

8    Supremacy Clause is not "capable of resolution in federal court without

9    disrupting the federal-state balance approved by Congress," which requires

10   courts to consider the appropriate balance of federal and state judicial

11   responsibilities. *Gunn*, 568 U.S. at 264. KWW has not previously been construed

12   by any court and Defendants' approach will deprive Washington courts of the

13   first opportunity to do so, leaving this Court with "a basic uncertainty about what

14   the law means." *See Arizona*, 567 U.S. at 415. Beyond that practical difficulty,

15   allowing removal of this case will put the Court squarely in the middle of an

16   intragovernmental dispute regarding application of state law, which is an area

17   upon which the federal courts ought not to tread. *See Republican Party of Guam*,

18   277 F.3d at 1090. Removal is simply not available here, and the Court should

19   remand the State's case to state court, where it belongs.

20

21

22

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**C.     The Court Should Award the State Its Fees and Costs Incurred Because of Defendants' Unreasonable Removal**

Under 28 U.S.C. § 1447(c), this Court may award costs and attorney fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); s*ee also Caskey v. Shriners Hosps. for Child.*, No. 2:16-CV-00169-SAB, 2016 WL 4367250, at *4–5 (E.D. Wash. Aug. 15, 2016) (awarding attorney fees and costs where defendants' bases for removal were not objectively reasonable because plaintiff's discussion of federal law in his complaint did not confer federal question jurisdiction under *Grable*). There is substantial, controlling precedent foreclosing Defendants' asserted bases for federal question jurisdiction. Defendants' removal of this case was objectively unreasonable, and the Court should order Defendants to pay the State's attorney fees and costs incurred in connection with this motion.

## IV.     CONCLUSION

For the foregoing reasons, the Court should remand and award the State attorney fees and costs under 28 U.S.C. § 1447(c).

DATED this 15th day of April, 2025.

PLAINTIFF'S MOTION FOR REMAND

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Respectfully Submitted,

NICHOLAS W. BROWN
Attorney General of Washington

_____
EMILY C. NELSON, WSBA #48440
BENJAMIN SEEL, WSBA #61165
Assistant Attorneys General
Wing Luke Civil Rights Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 342-7744
emily.nelson@atg.wa.gov
benjamin.seel@atg.wa.gov

PLAINTIFF'S MOTION FOR
REMAND

19

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing document was electronically filed with

3   the United States District Court using the CM/ECF system. I further certify that

4   all participants in the case are registered CM/ECF users and that service will be

5   accomplished by the CM/ECF system.

6          DATED this 15th day of April, 2025.

7

8   _____
    LOGAN YOUNG
    Paralegal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF'S MOTION FOR                    20
REMAND