YAAKOV M. ROTH
Acting Assistant Attorney General
DREW C. ENSIGN
Deputy Assistant Attorney General
ANTHONY P. NICASTRO
Acting Director
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation & Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
202-305-7551
jacob.weintraub@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:25-cv-00099-RLP |
| | ) | |
| ADAMS COUNTY SHERIFF'S OFFICE and | ) | STATEMENT OF INTEREST |
| ADAMS COUNTY, | ) | ON BEHALF OF |
| | ) | THE UNITED STATES OF AMERICA |
| Defendants. | ) | |
| | ) | |
| | ) | |

Washington v. Adams County
2:25-cv-00099-RLP

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

# TABLE OF CONTENTS

STATUTORY AUTHORITY TO FILE STATEMENT OF INTEREST ............................ 2

INTEREST OF THE UNITED STATES ........................................................... 2

STATEMENT OF THE CASE .................................................................... 3

I.      STATUTORY AND REGULATORY BACKGROUND ............................ 3

II.     WASHINGTON'S KEEP WASHINGTON WORKING ACT ................... 7

ARGUMENT .......................................................................................... 9

WASHINGTON'S KEEP WASHINGTON WORKING ACT VIOLATES THE
SUPREMACY CLAUSE ......................................................................... 9

        A.      KWW Unlawfully Regulates the Federal Government. ................... 9

        B.      KWW Unlawfully Discriminates Against the Federal Government. ........... 12

        C.      KWW is Conflict Preempted by the Immigration and Nationality Act. ..... 17

        D.      8 U.S.C. § 1373 Expressly Preempts KWW's Restrictions on Information
                Sharing ............................................................................... 18

CONCLUSION ....................................................................................... 25

CERTIFICATE OF SERVICE .................................................................... 26

# TABLE OF AUTHORITIES

## CASE LAW

*Arizona v. United States,*
567 U.S. 387 (2012) ...................................................................................... *passim*

*Berger v. State of New York,*
388 U.S. 41 (1967) ................................................................................................ 10

*California v. Superior Ct. of California, San Bernardino Cnty.,*
482 U.S 405 (1987). .............................................................................................. 22

*Chamber of Com. v. Whiting,*
563 U.S. 582, 587 (2011) ...................................................................................... 17

*City of Chicago v. Barr,*
961 F.3d 882 (7th Cir. 2020) ................................................................................ 23

*City of El Cenizo v. Texas,*
890 F.3d 164 (5th Cir. 2018) .................................................................................. 5

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363, 373 (2000) ...................................................................................... 17

*Cunningham v. Neagle,*
135 U.S. 1 (1890) .................................................................................................... 9

*Davis v. Elmira Sav. Bank,*
161 U.S. 275, 283 (1896) ................................................................................ 17, 18

*Dawson v. Steager,*
586 U.S. 171 (2019) ........................................................................................ 12, 15

*Flatow v. Islamic Republic of Iran,*
305 F.3d 1249 (D.C. Cir. 2002) .............................................................................. 2

*Galvan v. Press,*
347 U.S. 522, 531 (1954) ...................................................................................... 17

*Gonzalez v. United States Immigr. & Customs Enf't,*
975 F.3d 799 (9th Cir. 2020) .................................................................................. 5

*Hines v. Davidowitz,*
312 U.S. 52, 67 (1941) .................................................................................... 17, 18

Washington v. Adams County
2:25-cv-00099-RLP

ii

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

*Hively v. Ivy Tech Cmty. Coll. of Ind.*,
  853 F.3d 339 (7th Cir. 2017) ................................................................ 16

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981) ........................................................................... 20

*Johnson v. Maryland*,
  254 U.S. 51 (1920) ............................................................................. 9

*Kentucky v. Dennison*,
  65 U.S. 100 (1860) ............................................................................ 22

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ............................................................................. 3

*Lamar, Archer & Cofrin, LLP v. Appling*,
  584 U.S. 709 (2018) ...................................................................... 22, 23

*Leslie Miller, Inc. v. Arkansas*,
  352 U.S. 187 (1956) ....................................................................... 9, 11

*Loughrin v. United States*,
  573 U.S. 351 (2014) .......................................................................... 23

*Mayo v. United States*,
  319 U.S. 441 (1943) ........................................................................... 9

*McCulloch v. Maryland*,
  17 U.S. (4 Wheat.) 316 (1819), ...................................................... 9, 15

*McHenry Cnty. v. Kwame Raoul*,
  44 F.4th 581 (7th Cir. 2022) .......................................................... 12, 14

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .......................................................................... 19

*Murphy v. NCAA*,
  584 U.S. 453 (2018) ................................................................. 19, 20, 21

*New York v. United States*,
  179 F.3d 29 (2d Cir. 1999) ............................................................... 4, 7

*New York v. United States*,
  505 U.S. 144 (1992) .......................................................................... 21

Washington v. Adams County
2:25-cv-00099-RLP

iii

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

*North Dakota v. United States*,
  495 U.S. 423 (1990) ............................................................ 12, 13

*Printz v. United States*,
  521 U.S. 898 (1997) ............................................................ 19, 21

*Reno v. Condon*,
  528 U.S. 141 (2000) ............................................................ 20

*State v. Dep't of Just.*,
  951 F.3d 84 (2d Cir. 2020) ................................................. 7

*Truax v. Raich*,
  239 U.S. 33, 42 (1915) ....................................................... 17

*United States v. California*,
  314 F. Supp. 3d 1077 (E.D. Cal. 2018), *aff'd in part, rev'd in part and remanded*, 921 F.3d
  865 (9th Cir. 2019) ............................................................. 22

*United States v. California*,
  2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) ......................... 14

*United States v. Ferrara*,
  847 F. Supp. 964 (D.D.C. 1993), *aff'd* 54 F.2d 825 (D.C. Cir. 1995) ................................... 9

*United States v. Fresno Cnty.*,
  429 U.S. 452 (1977) ............................................................ 15

*United States v. King County*,
  122 F.4th 740 (9th Cir. 2024) ..................................... *passim*

*United States v. Washington*,
  596 U.S. 832 (2022) ............................................... 12, 15, 16

*Washington v. United States*,
  460 U.S. 536 (1983) ............................................................ 13

**FEDERAL STATUTES**

6 U.S.C. § 482(b) ................................................................... 6

8 U.S.C. § 237(a)(1)(C) ......................................................... 13

8 U.S.C. § 237(a)(1)(D) ......................................................... 13

Washington v. Adams County
    2:25-cv-00099-RLP

iv

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

8 U.S.C. § 1101 ................................................................................................ 4

8 U.S.C. § 1226 ............................................................................................. 4, 5

8 U.S.C. § 1226(a) .......................................................................................... 13

8 U.S.C. § 1226(c) ...................................................................................... 4, 13

8 U.S.C. § 1226(c)(3) ................................................................................. 4, 13

8 U.S.C. § 1226(d)(1)(A) ................................................................................ 5

8 U.S.C. § 1226(d)(1)(B) ................................................................................ 5

8 U.S.C. § 1226(f) .......................................................................................... 11

8 U.S.C. § 1231(a) ........................................................................................... 5

8 U.S.C. § 1231(a)(4)(A) ............................................................................... 22

8 U.S.C. § 1252c .............................................................................................. 6

8 U.S.C. § 1305 .............................................................................................. 24

8 U.S.C. § 1305(a)(1) ..................................................................................... 20

8 U.S.C. § 1306 .............................................................................................. 24

8 U.S.C. § 1324(c) ............................................................................................ 6

8 U.S.C. § 1357 ................................................................................................ 4

8 U.S.C. § 1357(d) ........................................................................................... 4

8 U.S.C. § 1357(g) ........................................................................................... 6

8 U.S.C. § 1357(g)(1)-(9) ................................................................................ 6

8 U.S.C. § 1357(g)(3) ...................................................................................... 6

8 U.S.C. § 1357(g)(10) .................................................................................... 6

8 U.S.C. § 1357(g)(10)(B) ............................................................................... 5

8 U.S.C. § 1373 ..................................................................................... 7, 19, 23

Washington v. Adams County
  2:25-cv-00099-RLP

v

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

8 U.S.C. § 1373(a) ....................................................................................... 19, 20, 21

8 U.S.C. § 1373(a)-(b) ....................................................................................... 7

8 U.S.C. § 1373(c) ....................................................................................... 6, 7, 21

8 U.S.C. § 1644 ....................................................................................... 6, 7

28 U.S.C. § 517 ....................................................................................... 2

28 U.S.C. § 518(b) ....................................................................................... 2

34 U.S.C. § 41307 ....................................................................................... 20

42 U.S.C. § 5779(a) ....................................................................................... 20

49 U.S.C. App. § 1305(a)(1) ....................................................................................... 20

## FEDERAL REGULATIONS

8 C.F.R. § 287.7 ....................................................................................... 4

8 C.F.R. § 287.7(a) ....................................................................................... 4, 5

8 C.F.R. § 287.7(d) ....................................................................................... 5

## STATE STATUTES

RCW 7.24.010 ....................................................................................... 12

RCW 7.24.080 ....................................................................................... 12

RCW 7.24.190 ....................................................................................... 12

RCW 10.93.160 ....................................................................................... 2

RCW 10.93.160(4) ....................................................................................... 17

RCW 10.93.160(4)(b) ....................................................................................... 23

RCW 10.93.160(5) ....................................................................................... 23

RCW 10.93.160(6) ....................................................................................... 8, 16

RCW 10.93.160(6)(a) ....................................................................................... 14

Washington v. Adams County
2:25-cv-00099-RLP

vi

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

RCW 10.93.160(6)(b) ............................................................................ 14, 15

RCW 10.93.160(7) ............................................................................ 8, 15, 17

RCW 10.93.160(8) ................................................................................ 8, 15

RCW 10.93.160(11) .......................................................................... 8, 15, 17

RCW 10.93.160(12) .......................................................................... 8, 15, 17

RCW 10.93.160(15) .................................................................................. 17

RCW 17 43.10.315 ............................................................................... 8, 16

RCW 43.10.315 ........................................................................................ 2

RCW 43.17.420 ..................................................................... 9, 12, 14, 17

RCW 43.17.425 ................................................................................ *passim*

## PUBLIC LAW

Pub. L. No. 119-1 ..................................................................................... 4

## LEGISLATIVE HISTORY

H.R. Rep. No. 104-725 ........................................................................ 7, 22

S. Rep. No. 104-249 ................................................................................. 22

## MISCELLANEOUS

U.S. Immigration and Customs Enforcement, *ICE's 287(g) Program*, available at
https://www.ice.gov/identify-and-arrest/287g (last visited Apr. 15, 2025).................... *passim*

Washington v. Adams County
2:25-cv-00099-RLP

vii

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

**STATUTORY AUTHORITY TO FILE STATEMENT OF INTEREST**

Pursuant to 28 U.S.C. § 517, the United States files the following Statement of Interest in support of Defendants Adams County and Adams County Sheriff's Office against the claims of Plaintiff State of Washington that Defendant has violated RCW 10.93.160, RCW 43.10.315, and RCW 43.17.425.

Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." Under 28 U.S.C. § 518(b), "[w]hen the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so." These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party, but nonetheless has a vested interest in the case. *See, e.g.*, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

**INTEREST OF THE UNITED STATES**

The United States has a substantial interest in, and long history of, working cooperatively with state and local governments on a range of law-enforcement priorities, including immigration. These cooperative efforts are critical to enabling the federal government to identify and remove the hundreds of thousands of individuals who violate immigration laws each year, including many thousands who are convicted of serious crimes.

Washington v. Adams County
    2:25-cv-00099-RLP

2

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

This undertaking fulfills the Executive Branch's responsibility to enforce federal statutes and to protect public safety.

Washington's "Keep Washington Working Act" strikes at the heart of this cooperative scheme. The Act, by intent and design, interferes with the federal government's enforcement of federal immigration law. And it violates the Supremacy Clause of the United States Constitution.

Washington's attempt to enforce the Act against Defendants represents an important decision by the State to prevent law enforcement agencies ("LEAs") from cooperating with federal immigration enforcement. That enforcement action is unlawful, because the Act itself is unlawful. Under the federal immigration laws, Washington cannot prevent LEAs from choosing to cooperate with the federal government to enforce the law. Its attempt to do so here should be dismissed.

The United States takes no position on the merits of any other issue not addressed in the attached Statement of Interest.

## STATEMENT OF THE CASE

### I.    STATUTORY AND REGULATORY BACKGROUND

The federal government "has broad, undoubted power over the subject of immigration and the status of aliens," based in part on the federal government's power to "establish a[] uniform Rule of Naturalization," and in part on the federal government's inherent power as a sovereign to police its borders and exclude or deport removable aliens. *Arizona v. United States*, 567 U.S. 387, 394 (2012) (quoting U.S. Const. art. I, § 8, cl. 4); *see also Kleindienst v. Mandel*, 408 U.S. 753, 765-66 & n.6 (1972). In exercising those powers, Congress established through the Immigration and Nationality Act ("INA") a cooperative system where state and

Washington v. Adams County
    2:25-cv-00099-RLP

3

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

local governments play a role in enforcing the federal immigration laws. *See, e.g.*, 8 U.S.C. § 1101 *et seq.* Indeed, "[c]onsultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. As the Second Circuit has explained: "Absent any cooperation at all from local officials," the immigration system—like other federal programs—"may fail or fall short of [its] goals[.]" *New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999).

At every turn, the INA's structure and design reflects a system where the federal government is able to partner with state and local governments regarding immigration. A prime example is the "detainer" scheme Congress has established. Specifically, the INA permits state and local law enforcement officers to cooperate with the federal government by responding to requests for assistance contained in federal "immigration detainers," including requests issued by U.S. Customs and Border Protection ("CBP") and ICE, the components of DHS that are responsible for immigration enforcement at the border and in the interior of the country, respectively. *See* 8 U.S.C. §§ 1226, 1357. An immigration detainer provides notice of DHS's intent to assume custody of a removable alien detained in the custody of another law enforcement agency and seeks state or local cooperation in that effort. *See* 8 U.S.C. §§ 1226, 1357(d); 8 C.F.R. § 287.7(a), (d). Further, on January 29, 2025, the President signed into law the Laken Riley Act. *See* Laken Riley Act, Pub L. 119-1. (2025). Among other things, the Laken Riley Act amended 8 U.S.C. § 1226(c) to provide that the "Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E)[.]" 8 U.S.C. § 1226(c)(3). Acting on its long-recognized authority to arrest and detain noncitizens, DHS promulgated 8 C.F.R. § 287.7, describing detainers and expressing that they are issued pursuant to 8 U.S.C. §§ 1226 and 1357.

Washington v. Adams County
2:25-cv-00099-RLP

4

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

An immigration detainer asks a law enforcement agency, state, or locality to: (1) notify DHS of the alien's release date from local custody; and (2) detain the alien for up to 48 hours beyond when the individual would otherwise be released on state charges. DHS issues detainers based on its determination that it has probable cause to believe that the individual is removable.[1] Immigration detainer requests ensure the safe transfer of criminals from state to federal custody in a secure environment, rather than requiring federal officials to make more dangerous arrests in public or private places. 8 C.F.R. § 287.7(a), (d); *see also*, "ICE's 287(g) Program," https://www.ice.gov/identify-and-arrest/287g (last visited Apr. 15, 2025) ("The 287(g) Program enhances the safety and security of our nation's communities by allowing ICE Enforcement and Removal Operations (ERO) to partner with state and local law enforcement agencies to identify and remove criminal aliens who are amenable to removal from the U.S.").

Additionally, federal authorities must "make available" to state and local authorities "investigative resources . . . to determine whether individuals arrested by such authorities for aggravated felonies are aliens[.]" 8 U.S.C. § 1226(d)(1)(A). Likewise, federal officials must also "designate and train officers and employees . . . to serve as a liaison to" state and local officials "with respect to the arrest, conviction, and release of any alien charged with an aggravated felony[.]" *Id.* § 1226(d)(1)(B); *see id.* §§ 1226(c), 1231(a). And state and local officials may "cooperate with the [federal government] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

---

[1] DHS detainers must be accompanied by a signed administrative warrant of arrest issued pursuant to 8 U.S.C. §§ 1226 or 1231(a). *See Gonzalez*, 975 F.3d at 799 ("a signed administrative arrest warrant issued pursuant to 8 U.S.C. §§ 1226 or 1231(a)—INA provisions concerning the [Secretary]'s authority to perform arrests by warrant and detain certain aliens—must now accompany a detainer."); *see also City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) (noting that a detainer request must be accompanied by an administrative warrant and "evidences probable cause of removability in every instance").

Washington v. Adams County
  2:25-cv-00099-RLP

5

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

Congress, further, has authorized the Department of Homeland Security ("DHS") to enter into formal cooperative agreements with states and localities. *See* 8 U.S.C. § 1357(g). Under these agreements, appropriately trained and qualified state and local law enforcement officers may perform specified functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens. 8 U.S.C. § 1357(g)(1)-(9). State and local officers' activities under these agreements are "subject to the direction and supervision of the [Secretary of Homeland Security]." 8 U.S.C. § 1357(g)(3). Informally, even in the absence of a written agreement, Congress has established that state and local law enforcement officers may "communicate with the [Secretary] regarding the immigration status of any individual," or "otherwise . . . cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10); *see also* 8 U.S.C. § 1324(c) (authorizing state and local law enforcement officers to make arrests for violations of the INA's prohibition against smuggling, transporting, or harboring aliens); 8 U.S.C. § 1252c (affirming state and local officers' authority to arrest certain felons who have unlawfully returned to the United States). Section 1373 further requires federal officials to "respond to an inquiry" by state or local officials "seeking to verify or ascertain the citizenship or immigration status of any individual within the[ir] jurisdiction." *Id*. § 1373(c); 8 U.S.C. § 1644; *see also* 6 U.S.C. § 482(b) (requiring information-sharing among federal agencies).

The Supreme Court has also recognized that information sharing among federal, state, and local governments is essential to the effective enforcement of the immigration laws. *See, e.g., Arizona*, 567 U.S. at 412 (noting Congress "has encouraged the sharing of information about possible immigration violations"). Toward that goal, Congress has prevented states and localities from adopting laws or policies that "prohibit[] or in any way restrict" the ability of

Washington v. Adams County
2:25-cv-00099-RLP

6

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

state and local law enforcement officers to cooperate with federal officials by sending and receiving "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," or maintaining and exchanging such information. 8 U.S.C. § 1373(a)-(b); *see also* 8 U.S.C. § 1644 (similar). Congress enacted these provisions "to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials" and the former Immigration and Naturalization Service. 3 H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep. to Welfare Reform Act, codified at 8 U.S.C. § 1644). Congress further provided in 8 U.S.C. § 1373 that DHS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c). Section 1373 "prohibits state and local governments and officials … from directly restricting the voluntary exchange of immigration information' with federal immigration authorities'." *State v. Dep't of Just.*, 951 F.3d 84, 112 (2d Cir. 2020) (quoting *City of New York*, 179 F.3d at 32-33).

## II.     WASHINGTON'S KEEP WASHINGTON WORKING ACT

In 2019, Washington enacted the Keep Washington Working Act ("KWW"), which Washington concedes "prohibits state and local law enforcement agencies from engaging or assisting in civil immigration enforcement," bars them from "detain[ing], or hold[ing] individuals in custody based solely on civil immigration warrants or detainers, or based on detention agreements with federal immigration authorities," and directs that "they may not facilitate contact between federal authorities and individuals in custody solely for civil immigration enforcement purposes." ECF No. 1-2 ¶ 4.22.

Washington v. Adams County
2:25-cv-00099-RLP

7

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

KWW works as intended. It prohibits local law enforcement agencies "from detaining an individual or holding them in custody solely for the purpose of determining their immigration status or solely based on a civil immigration detainer or warrant." ECF. No. 1-2 ¶4.28 (quoting RCW 10.93.160(7), (8)). As Washington itself puts it, KWW prohibits local law enforcement agencies "from entering into agreements with federal immigration authorities to enforce civil immigration law, or to detain individuals arrested on civil immigration violations." *Id*. (quoting RCW 10.93.160(11), (12)). Moreover, KWW prohibits local law enforcement agencies "from using their facilities or resources to facilitate civil immigration enforcement, ensuring that those resources remain dedicated to the purpose of enforcing state and local criminal law," further barring LEAs from granting federal immigration authorities "access to interview an individual in the custody of local law enforcement about a noncriminal matter unless access is required by state or federal law, a court has ordered that such access be granted, or the individual in custody has consented in writing to be interviewed." *Id*. ¶ 4.29 (quoting RCW 43.17.425, RCW 17 43.10.315, and RCW 10.93.160(6)).

Washington has brought this suit against Adams County and its Sherriff's Office for doing exactly what the immigration laws contemplate: Cooperating with the federal government to help enforce federal law—such as by sharing critical information with federal immigration authorities. Washington insists these actions are all proscribed by KWW. But that is no answer, because KWW is itself unlawful, in violation of the Supremacy Clause of the United States Constitution.

Washington v. Adams County
2:25-cv-00099-RLP

8

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

# ARGUMENT

## WASHINGTON'S KEEP WASHINGTON WORKING ACT VIOLATES THE SUPREMACY CLAUSE

Washington asserts KWW is lawful, because it does not "impede" federal officials from accomplishing their work. ECF No. 1-2 ¶¶ 1.2, 1.8. But that is *exactly* what KWW was designed to do. And it has accomplished that end—actively facilitating aliens' evasion of federal law in Washington. That is unlawful, in violation of the Supremacy Clause. Indeed, KWW contravenes the Supremacy Clause for a host of independent reasons, and virtually at every turn.

### A. KWW Unlawfully Regulates the Federal Government.

KWW unlawfully regulates the federal government by preventing federal agents from using their Congressionally authorized tools to effectuate alien detentions and removals. Stemming from the Supremacy Clause, the doctrine of intergovernmental immunity prevents Washington from regulating the activities of the Federal government. *See Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal government are free from regulation by any state."); *see also McCulloch*, 17 U.S. (4 Wheat.) at 436 (explaining that the states have no power to "in any manner control" the operations of the federal government); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (explaining that "the immunity of the instruments of the United States . . . extends to a requirement that they desist from performance until they satisfy a state officer" (quoting *Johnson v. Maryland*, 254 U.S. 51, 57 (1920)). Thus, "even in the absence of a specific federal law, federal officers are immune from state interference with acts 'necessary and proper' to the accomplishment of their federal duties." *United States v. Ferrara*, 847 F. Supp. 964, 968 (D.D.C. 1993), *aff'd* 54 F.2d 825 (D.C. Cir. 1995) (citing *Cunningham v. Neagle*, 135 U.S. 1 (1890)).

Washington v. Adams County
  2:25-cv-00099-RLP

9

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-305-7551

Under those principles, the provisions of KWW that Washington charges Adams County and Adams County Sheriff's Office with violating, as alleged in the Complaint, *see* ECF No. 1-2 ¶ 5.8 (citing RCW 7.24.010, RCW 7.24.080, and RCW 7.24.190), improperly regulate the federal government. Specifically, KWW precludes local law enforcement agencies from honoring ICE detainer requests or from arresting, detaining, or holding individuals in custody "based solely on civil immigration warrants or detainers." ECF No. 1-2 ¶ 4.22 (citing RCW 43.17.420). By refusing to honor civil detainers expressly authorized by Congress and creating a *de facto* requirement that federal immigration authorities obtain a criminal warrant to arrest or take custody of a detained alien, Washington has unlawfully burdened the use of these means for federal immigrations officials to carry out their statutory functions. Washington's enforcement of the provisions of KWW at issue here, therefore, effects direct regulation of the federal government. Congress expressly provided that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, through the Laken Riley Act, Congress amended 8 U.S.C. § 1226(c) to provide that the "Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E)[.]" 8 U.S.C. § 1226(c)(3). And the Supreme Court has acknowledged the role that administrative warrants play in the detention and removal process. *See Arizona*, 567 U.S. at 407–08 (noting that the Attorney General has discretion to issue warrants, which are executed by federal officers).

Whereas administrative warrants issue on probable cause that the individual is an alien who is subject to removal (which does not necessarily require that the alien committed a criminal offense, *see, e.g.*, 8 U.S.C. §§ 237(a)(1)(C), (D)), criminal judicial warrants issue on probable cause that a crime has been committed, *see Berger v. State of New York*, 388 U.S. 41,

Washington v. Adams County
2:25-cv-00099-RLP

10

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

55 (1967). Congress allows federal agents to detain illegal aliens under the former standard, but Washington, through the provisions of KWW, prevents federal agents from doing so unless they satisfy the latter, higher standard. These provisions, therefore, foreclose federal immigration officials' use of the congressionally authorized detention method and directly impose a different method, with a different standard, on the federal government for effectuating detentions. Washington has no such power to prevent federal agents from carrying out their duties "until they satisfy a state officer." *See Leslie Miller*, 352 U.S. at 190; *see also Arizona*, 567 U.S. at 406 (recognizing that "a conflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy" (alterations and citation omitted)).

Washington's denial of ICE officials' access to otherwise public state and local facilities likewise regulates federal functions. Specifically, Washington has conceded in its complaint, by barring federal immigration authorities from interviewing aliens in custody regarding a noncriminal matter (citing RCW 10.93.160(6)(a)); by barring federal officials federal immigration authorities access to aliens in custody without first obtaining the alien's written consent to be interviewed by federal immigration authorities (citing RCW 10.93.160(6)(b); and by barring localities from honoring federal immigration warrants or detainers (citing RCW 43.17.420), Washington forces federal immigration officers to engage in difficult and dangerous efforts to rearrest aliens who were previously in local custody.

Collectively, these effects of Washington's KWW necessarily "'require[] ICE to entirely transform its approach to' its sovereign function of transporting and removing noncitizen detainees." *See United States v. King County*, 122 F.4th 740, 756 (9th Cir. 2024). "Because this impermissibly 'override[s] the federal government's decision, pursuant to

Washington v. Adams County
2:25-cv-00099-RLP

11

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

discretion conferred by Congress," the intergovernmental immunity doctrine's regulation prohibition bars KWW. *See id.*

### B. KWW Unlawfully Discriminates Against the Federal Government.

The doctrine of intergovernmental immunity also prohibits states from discriminating against the Federal government or even just a part of it. *See North Dakota v. United States*, 495 U.S. 423, 434–36 (1990). A state law discriminates against the federal government "by singling out the Federal government for unfavorable treatment." *United States v. Washington*, 596 U.S. 832, 839 (2022). And *any* discriminatory burden on the federal government is impermissible. *See Dawson v. Steager*, 586 U.S. 171, 171 (2019).[2] Although state laws that innocuously "touch[] on an exclusively federal sphere [are] not enough to establish discrimination," *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 594 (7th Cir. 2022), state laws that uniquely *burden* federal activities violate this nondiscrimination rule. And courts presume that such laws are invalid absent clear congressional authorization for that kind of state regulation. *See Washington*, 596 U.S. at 839; s*ee also King County*, 122 F.4th at 757 (finding unlawful discrimination where a County Order directed local officials to ensure that operators who leased space from the County's airport would not service ICE charter flights).

The provisions of KWW unlawfully discriminate against the federal government by singling out federal immigration enforcement for unfavorable treatment. Indeed, KWW facially targets federal immigration authorities, denying them access to detainees, state and local facilities, and information absent a criminal warrant. *See* ECF. No. 1-2 ¶4.28 (prohibiting local law enforcement agencies "from detaining an individual or holding them in custody

---

[2] The principles of the intergovernmental tax immunity doctrine apply to the general intergovernmental immunity doctrine. *See North Dakota*, 495 U.S. at 434–39.

Washington v. Adams County
2:25-cv-00099-RLP

12

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

solely for the purpose of determining their immigration status or solely based on a civil immigration detainer or warrant" (quoting RCW 10.93.160(7), (8); and "from entering into agreements with federal immigration authorities to enforce civil immigration law, or to detain individuals arrested on civil immigration violations" *Id*. (quoting RCW 10.93.160(11), (12)). Moreover, Washington, through KWW, prohibits local law enforcement agencies "from using their facilities or resources to facilitate civil immigration enforcement, ensuring that those resources remain dedicated to the purpose of enforcing state and local criminal law," further barring LEAs from granting federal immigration authorities "access to interview an individual in the custody of local law enforcement about a noncriminal matter unless access is required by state or federal law, a court has ordered that such access be granted, or the individual in custody has consented in writing to be interviewed." *Id*. ¶ 4.29 (quoting RCW 43.17.425, RCW 17 43.10.315, and RCW 10.93.160(6)).

These provisions therefore treat federal immigration authorities less favorably than the general public and other law enforcement agencies. On their face, the provisions of KWW do not prevent state and local agents from sharing the information that federal immigration authorities seek, including release dates and contact information, with anyone else—including members of the public and other law enforcement agencies. *See, e.g.,* RCW 43.17.425, RCW 17 43.10.315, and RCW 10.93.160(6). The prohibitions Washington has imposed, however, apply solely against federal officers and not law enforcement officers from other states or localities. KWW, therefore "treats someone else better than it treats [federal immigration authorities]." *North Dakota*, 495 U.S. at 438 (quoting *Washington v. United States*, 460 U.S. 536, 544 (1983)).

Washington v. Adams County
2:25-cv-00099-RLP

13

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

Washington cannot plausibly argue that differential treatment of federal immigration authorities is permissible here because the more favorably treated groups are not "similarly situated" to ICE. *See McHenry County*, 44 F.4th at 594). Under that argument, because "only" ICE carries out civil immigration enforcement, there could be no entity "similarly situated" to ICE, and, absent such a comparator, Washington would be free to discriminate with impunity. Singling out functions that only the federal government performs for differential treatment is *ipso facto* evidence of discrimination. Moreover, the provisions of KWW do not single out an exclusively federal function innocuously—they discriminatorily burden the United States in carrying out that function *specifically* because Washington disagrees with federal policy.

The Court should not read the "similarly situated" language so narrowly as to foreclose membership by others to evade a finding of discrimination. To the contrary, if the only difference justifying the discriminatory treatment is the federal agency's enforcement of a particular federal law, the discrimination is clear. *See King County*, 122 F.4th at 757–58 (rejecting the County's argument that "significant differences" between ICE and others who chartered flights justified the discriminatory treatment of ICE where the difference was ICE's role in carrying out deportations); *United States v. California*, 2018 WL 5780003, at *6 (E.D. Cal. Nov. 1, 2018) (rejecting California's argument that it could discourage conveyances of federal public lands because those lands, unlike private lands, are preserved for the public's benefit: "This quality of federal public lands, however, is so directly linked to their federal status that it cannot serve as the basis for non-discriminatory differentiation."); *cf. McHenry County*, 44 F.4th at 594 (finding the TRUST Act's prohibition on state and local officials entering into contracts to house immigration detainees in state or local facilities was nondiscriminatory partly because the provision touched on a federal sphere in an innocuous

Washington v. Adams County
2:25-cv-00099-RLP

14

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

way but did not treat anyone else better than the federal government). Here, the federal government suffers the "differential treatment" the *McHenry County* Court found lacking because other law enforcement agencies and the public are given access to government facilities, detainees, and information on more favorable terms than are available to federal immigration authorities. *See, e.g.*, ECF No. 1-2 ¶¶ 4.22 (citing RCW 43.17.420), 4.23 (citing RCW 10.93.160(4); RCW 43.17.425), 4.25 (citing RCW 10.93.160(15)), and 4.28 (citing RCW 10.93.160(7), (11), 12)).

More fundamentally, the Court should consider the "similarly situated" language in context. Since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the Supreme Court has held that states may not impose taxes directly on the federal government. But states may impose nondiscriminatory taxes that indirectly increase costs for the federal government so long as the tax is "imposed equally on the other similarly situated constituents of the State." *United States v. Fresno Cnty.*, 429 U.S. 452, 462 (1977). Underlying this principle is the rationale that taxes imposed solely on federal employees "could be escalated by a State so as to destroy the federal function performed by them[.]" *Id.*, 429 U.S. at 464 n.11. But if the tax were also imposed on residents and voters of the state, that would provide a political check against abuse of the taxing power and abate the danger to the federal government. *Id.*; *cf. Dawson*, 586 U.S. at 171 (holding that a state statute exempting from state taxation the pension benefits of state and local law enforcement officers, but not the federal pension benefits of a retired federal marshal, violates intergovernmental immunity).

In contrast, when the target of the impermissible discrimination is the federal government itself, or even just a part of it, the danger is at its peak. *See Washington*, 596 U.S. at 842 (noting the absence of a "ballot-box safeguard" for laws that discriminate solely against

Washington v. Adams County
2:25-cv-00099-RLP

15

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

the Federal government); *King County*, 122 F.4th at 757–58 ("[B]urdening federal operations, and *only* federal operations . . . violates the anti-discrimination principle[.]" (citation omitted)); *cf. Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 346 (7th Cir. 2017) (policy that discriminates against some women constitutes prohibited sex discrimination even if it does not affect every woman). Here too, there is no political check on the unlawful discrimination as long as frustrating the federal government's enforcement of its immigration law remains popular with voters of the state. Allowing discrimination of this sort to stand would undercut the Supremacy Clause by enabling states to thwart federal policy so long as that policy were implemented by only one federal agency. *See Washington*, 596 U.S. at 841 (explaining that absent the prohibition on discrimination, nothing prevents a state from imposing unduly high costs on the federal government for the benefit of the state's own citizens).

Finally, invalidating the discriminatory provisions of Washington's KWW would not create a back-end anticommandeering problem. Washington cannot seriously contend, initially, that actively discriminating against the federal government is constitutionally protected inaction. Rather, to the extent Washington chooses to permit local law enforcement agencies to give other law enforcement agencies and members of the public access to information, detainees in their custody, and facilities, they cannot withhold the same from the federal government just because Washington disagrees with federal immigration priorities. *See King County*, 122 F.4th at 758. Just as there is no "threat of unconstitutional commandeering when ICE uses county highways to transport immigration detainees from one place to another just because the county owns its highways," *King County*, 122 F.4th at 758, there is no such threat when federal immigration authorities access detainees upon their release from state or local custody (including in the public lobbies of state and local facilities) or when federal

Washington v. Adams County
2:25-cv-00099-RLP

16

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

immigration authorities access information already collected by Washington or its local law enforcement agencies.

### C. KWW is Conflict Preempted by the Immigration and Nationality Act.

State laws cannot "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Thus, state laws are invalid if they "either frustrate[] the purpose of the national legislation or impair[] the efficiency of th[o]se agencies of the federal government to discharge the duties, for the performance of which they were created." *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) ("If the purpose of the [federal law] cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield[.]" (citation omitted)).

Pursuant to its "broad, undoubted power over the subject of immigration and the status of aliens," *Arizona*, 567 U.S. at 394, Congress enacted the INA. The INA established a "comprehensive federal statutory scheme for regulation of immigration and naturalization[.]" *Chamber of Com. v. Whiting*, 563 U.S. 582, 587 (2011). To effectuate that scheme, the INA defines categories of aliens who may not be admitted to the United States; makes unlawful entry and reentry federal offenses; specifies which aliens may be removed from the United States and the procedures for such removal; and vests federal immigration officials with significant discretion, among other things. *See Arizona*, 567 U.S. at 396; *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are . . . entrusted exclusively to Congress . . ."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in

Washington v. Adams County
2:25-cv-00099-RLP

17

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

the Federal Government"); *see also Hines*, 312 U.S. at 68 ("[T]he power to restrict, limit, regulate, and register aliens as a distinct group is not an equal and continuously existing concurrent power of state and nation, but that whatever power a state may have is subordinate to supreme national law.").

Because Congress found that "deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers," *Nielsen v. Preap*, 586 U.S. 392, 398 (2019) (citation omitted), Congress requires federal immigration agents to detain criminal illegal aliens immediately upon their release from state or local custody, pending their removal from the United States. *See, e.g.*, 8 U.S.C. §§ 1226(a), (c), 1231(a). The provisions of KWW "frustrate[] the purpose of the INA" and "impair[] the efficiency of "federal immigration authorities "to discharge the duties, for the performance of which they were created." *See Elmira Sav. Bank*, 161 U.S. at 283. Its provisions prohibit local law enforcement agencies "from detaining an individual or holding them in custody . . . for the purpose of determining their immigration status or solely based on a civil immigration detainer or warrant" and "from entering into agreements with federal immigration authorities to enforce civil immigration law, or to detain individuals arrested on civil immigration violations." ECF. No. 1-2 ¶4.28 (quoting RCW 10.93.160(7), (8), (11), (12). Accordingly, the INA conflict preempts the relevant provisions of KWW.

### D.  8 U.S.C. § 1373 Expressly Preempts KWW's Restrictions on Information Sharing.

Independent of conflict preemption, the United States has also stated a claim of express preemption of KWW's restrictions on information sharing by 8 U.S.C. § 1373(a). Express preemption occurs when Congress explicitly precludes state or local regulation in a particular

Washington v. Adams County
2:25-cv-00099-RLP

18

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

area. *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (finding express preemption where the federal law provided that "[N]o State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any air carrier" (49 U.S.C. App. § 1305(a)(1) (1988 ed.)).

Section 1373(a)'s preemptive language provides that a "[s]tate . . . or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). That provision makes clear Congress's intent that states not stand in the way of the federal government's regulation of aliens, thereby codifying the constitutional principles outlined above. *See also Murphy v. NCAA*, 584 U.S. 453, 478 (2018) (explaining that "it is a mistake to be confused by the way in which a preemption provision is phrased," because "language might appear to operate directly on the States" but in substance merely prevent the states from obstructing federal regulation of private parties); *see id.* (discussing 49 U.S.C. app. § 1305(a)(1) (1988)).

This type of information-sharing law does not implicate the Tenth Amendment's anticommandeering principle. In *Printz*, although the Court held that local law enforcement officers could not be required to perform background checks to validate the legality of gun sales under federal law, it distinguished statutes that "require only the provision of information to the Federal government," as they "do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." *Printz v. United States*, 521 U.S. 898, 918 (1997). The Supreme Court's Tenth Amendment cases are therefore not properly read to invalidate reporting requirements, such as the requirement for "state and local law

Washington v. Adams County
2:25-cv-00099-RLP

19

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

enforcement agencies to report cases of missing children to the Department of Justice." *Id.* at 936 (O'Connor, J., concurring) (citing 42 U.S.C. § 5779(a), transferred to 34 U.S.C. § 41307); *see Reno v. Condon*, 528 U.S. 141, 151 (2000) (Constitution does not prohibit federal enactments that "do[] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[ ] the States as the owners of data bases"). Invalidating the unconstitutional restrictions on information sharing, thereby giving state officers the choice to communicate with federal agents, would therefore not violate the Tenth Amendment.

Moreover, unlike in *Murphy*, 584 U.S. at 458, where the federal statutory provision at issue did not "impose any federal restrictions on private actors," but instead sought to prohibit states from authorizing sports gambling schemes, *id.* at 480, here, the federal government and Washington both seek to regulate private individuals. The issue is therefore not whether the federal government has commandeered a state, but whether the state's scheme is preempted insofar as it poses an obstacle to the effectuation of the federal scheme. And it is precisely when two regulatory schemes collide in this fashion that the Supremacy Clause prohibits the State from using its authority to create an obstacle to the functioning of the federal scheme. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 289–90 (1981) (stating that it "is incorrect" to "assume that the Tenth Amendment limits congressional power to preempt or displace state regulation of private activities . . .").

Indeed, given its exclusive authority over immigration, Congress could have provided that it would immediately remove aliens regardless of pending state criminal prosecutions. Instead, Congress allows states to enforce their criminal laws against aliens before deportation. But if states choose to do so, they cannot, for example, terminate custody or refuse to communicate or cooperate in a way that frustrates the federal government in assuming custody

Washington v. Adams County
   2:25-cv-00099-RLP

20

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

for the purpose of removing the alien. Allowing state criminal custody to continue while requiring that states take the steps necessary to effect an orderly transfer to federal officers at the end of such custody does not in any sense "commandeer" the state into enforcing federal law, but, rather, merely places conditions on the state's exercise of its own regulatory authority. *See Hodel*, 452 U.S. at 290–91 ("We fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role."). So long as Congress has expressly or implicitly preempted a state from interfering with federal regulation of private parties, it is not impermissibly regulating the state directly.

Unlike the "commandeering" cases where the Supreme Court was concerned about political accountability, the federal government here is not requiring Washington and its localities to enforce federal law; it does not expect them to arrest particular aliens or extend the custody of those who would otherwise be released. *See Printz v. United States*, 521 U.S. at 926 (citing *New York v. United States*, 505 U.S. 144, 188 (1992)); *see also Murphy*, 584 U.S. at 473. Instead, it is the federal government that seeks to assume custody, and only of those aliens that Washington and its localities have already decided, for their own reasons, to take into custody pursuant to state and local criminal law. When ICE shows up at a Washington or local facility to take an alien into federal custody, there is no question of whom to blame. The federal government bears sole responsibility for the actions it takes with respect to private individuals pursuant to its regulatory authority. *Cf.* 8 U.S.C. § 1226(f) (allowing states to sue the federal government for decisions or failures with respect to the detention of aliens that cause harm to a state or its residents).

Washington v. Adams County
2:25-cv-00099-RLP

21

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

Ultimately, the Court must understand the Tenth Amendment in the context of the Constitution as a whole. Limits on the sovereign powers of the states "are an essential part of the Framers' conception of national identity and Union." *California v. Superior Ct. of California, San Bernardino Cnty.*, 482 U.S. 400, 405 (1987). Writing on the Extradition Clause, for instance the Supreme Court noted its "obvious objective" "that no State should become a safe haven for the fugitives from a sister State's criminal justice system." *Id.* at 406. That Clause provides that one state may demand that another state return fugitives to its custody. *See* U.S. Const. art. IV, § 2; *see also Kentucky v. Dennison*, 65 U.S. 66, 100 (1860) ("[I]t is manifest that the statesmen who framed the Constitution were fully sensible, that from the complex character of the Government, it must fail unless the States mutually supported each other and the General Government[.]"). If one state could demand that another state release a criminal into its custody without offending the Constitution, it follows that the United States can do the same.

So long as Section 1373 is constitutional—as it is—there is no doubt KWW violates it. The statutory text, structure, and purpose of Section 1373 confirm that "information regarding citizenship or immigration status" also covers aliens' contact information and release dates. By its terms, Section 1373(a) applies to any "information *regarding* [an individual's] citizenship or immigration status[.]" 8 U.S.C. § 1373(a) (emphasis added). As the Supreme Court has explained, statutory terms like "regarding" or "related to" have "a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717–18 (2018) (citing authorities); *see also United States v. California*, 314 F. Supp. 3d 1077, 1104 (E.D. Cal. 2018) (determining that the phrase "information regarding" should be read to "serve[] a purpose even

Washington v. Adams County
2:25-cv-00099-RLP

22

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

when the statute is read narrowly."), *aff'd in part, rev'd in part and remanded*, 921 F.3d 865 (9th Cir. 2019).

Reading the term "regarding" to have such a "broadening effect," *Lamar*, 584 U.S. at 717, is especially appropriate in this statutory context, because 8 U.S.C. § 1373(c), which establishes federal officials' duty to share information with states, does not include the term in requiring federal officials to provide "the citizenship or immigration status of any individual" to states. Congress' inclusion of "regarding" in Section 1373(a), juxtaposed with its omission of such a term in an otherwise-parallel provision of the same statute, indicates that "Congress intended a difference in meaning." *Loughrin* v. *United States*, 573 U.S. 351, 358 (2014).

And, while the applicable context of "regarding" is important, "[p]roper interpretation [of language in a statute] considers not only the specific context in which the language is used, but the overall structure of the statute as a whole, as well as its history and purpose." *City of Chicago v. Barr*, 961 F.3d 882, 898–99 (7th Cir. 2020). The legislative history of Section 1373 provides additional insight into the meaning of "regarding" here. *See Arizona*, 567 U.S. at 405 (considering legislative history as part of a conflict-preemption analysis). Congress enacted Section 1373 to ensure that state and local officials can "communicate with [federal immigration authorities] regarding *the presence, whereabouts, or activities of illegal aliens*," not merely their legal classification. H.R. Rep. No. 104-725, at 383 (1996) (emphasis added); *see also* S. Rep. No. 104-249, at 19–20 (1996) ("The acquisition, maintenance, and exchange of immigration-related information by State and local agencies is . . . of considerable assistance to . . . achieving of the purposes and objectives of the [INA].").

Furthermore, the detention and removal provisions of the INA establish a clear relationship between an alien's release date and his or her immigration status. 8 U.S.C.

Washington v. Adams County
2:25-cv-00099-RLP

23

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

§ 1231(a)(4)(A) (providing that a convicted alien in state criminal custody who is subject to a final removal order may not be removed until "released from imprisonment"). The release date thus dictates when such an alien must be detained and removed from the United States—a matter directly related to (and thus "regarding") the alien's "immigration status." Accordingly, Section 1373(a) expressly preempts the Sanctuary Policies' restrictions on sharing information about a detainee's upcoming release from custody.

Contact information, including current addresses, also directly bears on an alien's immigration status. Aliens must "notify the [Secretary of Homeland Security] in writing of each change of address and new address within ten days from the date of such change[.]" 8 U.S.C. § 1305. Failure to comply with that provision is itself grounds for mandatory detention and removal, unless excused. *See* 8 U.S.C. § 1306. An alien's current address reveals whether the alien has complied with the notification requirement, which in turn dictates whether the alien is subject to detention and removal. Contact information, like release-date information, is therefore also directly related to the alien's immigration status.

Against that backdrop, Washington's restrictions on information sharing are expressly preempted by Section 1373. KWW states that local law enforcement agents are not permitted to "share nonpublicly available information about an individual with federal immigration authorities for civil immigration enforcement purpose." ECF No. 1-2 ¶ 4.23 (citing RCW 10.93.160(4)(b), (5); RCW 43.17.425; Laws of 2019, ch. 440, § 8). Nor can Washington point to its purported savings clause to avert the conflict. *See id.* (noting that KWW permits local law enforcement agents to undertake those activities "as required to do so by state or federal law, including 8 U.S.C. § 1373"). Section 1373 does not require states and local governments to share and maintain that information, however, but only prohibits restrictions on those activities.

Washington v. Adams County
2:25-cv-00099-RLP

24

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

Washington has therefore prohibited the sharing of information that federal law expressly contemplates states will share, and so the relevant provisions of KWW are expressly preempted.

## CONCLUSION

The Supremacy Clause prohibits Washington from obstructing the federal government's ability to enforce laws that Congress has enacted or to take actions entrusted to it by the Constitution and from enacting legislation that place its local law enforcement officers in the position of becoming obstacles to the execution of federal immigration laws. Moreover, Washington's KWW impermissibly regulates and discriminates against the federal government. Finally, Congress has expressly preempted the provisions of KWW that Washington claims Adams County and Adams County Sheriff's Office violate.

Accordingly, the provisions of KWW that Washington is trying to enforce against Adams County and its Sherriff's Office are themselves unlawful—void ab initio under the Supremacy Clause. This Court should ultimately find for the Defendants.

Dated:  April 18, 2025                              Respectfully Submitted,

YAAKOV M. ROTH                              /s/ J. Max Weintraub
Acting Assistant Attorney General        J. MAX WEINTRAUB (VSB No. 36188)
Civil Division                                          Senior Litigation Counsel
                                                            United States Department of Justice
DREW C ENSIGN                                  Civil Division
Deputy Assistant Attorney General         Office of Immigration Litigation
                                                            General Litigation & Appeals Section
ANTHONY P. NICASTRO                       P.O. Box 878, Ben Franklin Station
Acting Director                                      Washington, DC 20044
General Litigation & Appeals Section      Phone:  (202) 305-7551
                                                            Email: jacob.weintraub@usdoj.gov

        Attorneys for the United States

Washington v. Adams County
    2:25-cv-00099-RLP

25

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee of the United States Department of Justice and is a person of such age and discretion as to be competent to serve papers.

That on April 18, 2025, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of the Parties:

Emily Crystal Nelson
Washington State Office of the Attorney General
800 5th Avenue
Suite 2000
Seattle, WA 98104

Benjamin Michael Seel
Washington State Office of the Attorney General
800 5th Avenue
Suite 2000
Seattle, WA 98104

Joel B. Ard
ARD LAW GROUP PLLC
P.O. Box 281
Kingston, WA 98346

/s/ J. Max Weintraub
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation & Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-7551
Email: jacob.weintraub@usdoj.gov

Washington v. Adams County
2:25-cv-00099-RLP

26

U.S. DEPARTMENT OF JUSTICE
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

202-305-7551